182 Cal.App.4th 369 (2010)
In re MARCOS G. et al., Persons Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent,
v.
VICTOR O., Defendant and Appellant.
No. B215969.
Court of Appeals of California, Second District, Division Three.
February 4, 2010.
*374 Anna L. Ollinger, under appointment by the Court of Appeal, for Defendant and Appellant.
James M. Owens, Assistant County Counsel, and Melinda S. White-Svec, for Plaintiff and Respondent.

OPINION
CROSKEY, Acting P. J.
In this dependency case (Welf. & Inst. Code, § 300 et seq.),[1] Victor O. (Father) has appealed from an order that denied his section 388 petition[2] and terminated his parental rights. Father contends he was never given proper notice of certain hearings and therefore his section 388 petition requesting that the trial court vacate orders from hearings dating back to the adjudication and disposition hearing should have been granted. He asserts that (1) the court abused its discretion in not granting his petition and (2) he has suffered prejudicial error because notice provisions in the dependency court statutes and Penal Code were not followed on his behalf.
We find that although there was a failure to follow certain notice provisions, the error was not prejudicial; moreover, denial of Father's section 388 petition was not an abuse of discretion. The order denying his section 388 petition and terminating his parental rights will be affirmed.

BACKGROUND OF THE CASE
A dependency petition was filed on November 22, 2006, by the Los Angeles County Department of Children and Family Services (the Department) after the Department was notified by personnel at a local hospital that T.G. (Mother) had tested positive for amphetamine and marijuana when giving birth to baby Michael N. (baby Michael). Mother had two other children at the time, one-year-old L.N. (L.) and two-year-old Marcos G. (Marcos). Father asserts he *375 is the biological father of Marcos.[3], [4] Father was incarcerated in a juvenile detention facility when Marcos was born.
Although baby Michael and L. were detained by the Department on November 17, 2006, Mother had not brought Marcos to the Department office by then. Three days later she had no explanation for his whereabouts and so he was determined to be at large and a protective custody warrant was requested for him.
Father's whereabouts were also unknown by the Department at that time. Mother told the Department case social worker that Father was currently incarcerated, however she stated she did not know his birth date and did not know the address or phone numbers of any of Father's family members. The Department's detention report states that without Father's birth date the Department was not able to submit a parent locater search for him.
The section 300 petition filed by the Department on behalf of Marcos, L. and baby Michael alleges that Mother and her male companion Michael N. have a history of domestic violence with a violent altercation as recent as November 7, 2006; the male companion Michael N. has engaged in violence against his own mother; Mother has a history of illegal drug use and currently was using amphetamine and marijuana and used those drugs during her pregnancy with baby Michael; the male companion Michael N. has a history of illegal drug use and was currently using methamphetamine; and these matters endanger the minors' physical and emotional health and safety and place them at risk of such harm. The petition does not allege that Father is an offending parent.
At the November 22, 2006 detention hearing the court made a proper notice finding, found that Father is the alleged father of Marcos,[5] and detained the three children in shelter care. No attorney was appointed for Father at that time. The Department was ordered to present evidence of due *376 diligence in attempting to locate the fathers of the children by the next hearing. There is also an order that a county jail removal order be prepared "for Father," but there is no indication which of the fathers is meant.[6]
A report for a December 7, 2006 prerelease investigation hearing on the minors' adult family members who might be able to care for the children shows that two members of Father's family were interviewed, one on December 3, 2006 (Marcos's aunt), and the other on December 5, 2006 (Marcos's paternal grandmother and grandfather, with whom Marcos had been living off and on since he was born, a fact not revealed to the Department by Mother). By that time Marcos had been located and was in shelter care. Thus, by at least the December 7, 2006 hearing the Department had information regarding Father's relatives. The homes of the relatives were found not suitable for placing Marcos with them.
The jurisdiction/disposition report for the January 16, 2007 pretrial resolution conference (PRC), signed by the social worker on January 10, 2007, shows that Marcos and L. had been placed together in a foster home and baby Michael in a separate foster home. The report states the concurrent plan for the minors was adoption. Marcos's paternal grandmother indicated she was no longer interested in having him placed in her home and he should remain in his current placement. Father had been located and found to be incarcerated at a youth correctional facility in Stockton. According to the report, the social worker tried to locate him at the correctional facility using the name he apparently goes by (Daniel) but initially was unable to find him. With the assistance of the Department of Justice it was found that Father's legal name is Victor Daniel O. The report states the social worker sent a letter to Father requesting that he contact her for an interview but as yet Father had not made the contact. The report states the social worker submitted an "in and out" for Father but there was insufficient time to process it and therefore Father would not be transported to court. The social worker faxed a letter to Father asking that he contact the social worker and that if he did not wish to attend the court hearing he sign a waiver of appearance. The social worker had yet to receive a waiver. She recommended that Father receive no reunification services as the court had previously found him to be an alleged Father.
A proof of service for Father shows notice of the January 16 PRC hearing was served on him by certified or registered mail sent to the Stockton juvenile correctional facility on January 5, 2007, and a copy of the dependency petition was attached to the notice. The notice advised Father, among *377 other things, that he had the right to be present at the hearing, present evidence, be represented by a court-appointed attorney if he could not afford his own attorney, that the hearing may proceed even if he is not there, and the court may determine if the allegations in the petition are true and declare the minors dependents and remove them from the custody of parents or guardians and make orders concerning placement, visitation and services. Father was also advised by the notice who he could contact if he had questions, and that person's phone number was provided.
The January 16, 2007 PRC was continued to March 21, 2007, for proper notice to parents of the minors and for a further ICWA report (Indian Child Welfare Act of 1978; 25 U.S.C. § 1901 et seq.). Notice of the March 21, 2007 hearing was sent to Father on January 22, 2007, by certified or registered mail, with a copy of the petition attached. The notice contains the same advisements as given to him by the notice of hearing for the January 16, 2007 hearing. A post office receipt shows the mail was addressed to Father at the Stockton facility, was delivered on February 1, 2007, and was signed for by a Kathy Maldonado. The record contains a "statewide tracking sheet" for Father (dated Mar. 19, 2007), that was issued in response to an "order for prisoner's appearance at hearing affecting prisoner's parental rights," which the dependency court issued on January 23, 2007, for the March 21, 2007 hearing. That order is directed to the warden of the youth correctional facility and it orders the warden to deliver Father to the custody of the Los Angeles County Sheriff so that Father could be transported to the dependency court for the March 21, 2007 hearing unless Father executed the waiver of appearance or declined to execute the waiver but also declined to be transported to the hearing. The statewide tracking sheet states that (1) the court's order for Father's appearance at the March 21, 2007 hearing was received by the "statewide office" and was being returned because there was insufficient time to pick up Father prior to the hearing date, and (2) Father had been transferred to the "Ventura Camp." (A document in the appellate record refers to it as the "Ventura Fire Camp.") However, a supplement report prepared for the March 21, 2007 hearing states that on March 19, 2007, the social worker made contact with the youth correctional facility in Stockton and was told that Father had been transported, for the hearing, to a correctional facility in Chino.
Father did not appear at the March 21, 2007 hearing. The Department's attorney indicated to the court his understanding that Father was "incarcerated beyond the time of reunification," observed that Father had been found to be an alleged father only, and indicated that the Department would not be *378 offering him reunification services. However, the attorney noted that Father had a right to be present at the hearing. The court indicated it did not "see[] the necessity of having [Father] brought in [since] he's unnamed [as a perpetrator in the dependency petition] and an alleged father." The Department's attorney observed that Father would be entitled to services "if he comes in and establishes presumed fatherhood."
Mother waived her rights and submitted on the matter. The court sustained the allegations in the dependency petition, adjudicated the minors dependent children of the court, ordered a case plan for Mother and father Michael N., and ordered that reunification services would not be ordered for Father pursuant to section 361.5, subdivision (a) and In re Zacharia D. (1993) 6 Cal.4th 435 [24 Cal.Rptr.2d 751, 862 P.2d 751] (alleged father status). Monitored visits for Father, Mother, and father Michael N. were ordered, with the fathers' visits to begin after they contacted the Department. A copy of the March 21, 2007 minute order was sent to Father at the Stockton facility.
A six-month status review hearing was set for September 19, 2007. Notice was sent to Father at the Stockton facility. The proof of service states the notice was mailed on September 19, 2007, but it was apparently meant to say August 19, 2007, because it was signed on August 20, 2007. Father did not appear for the hearing. The September 19 hearing was continued to November 6, 2007, because the Department had changed its recommendation regarding Mother's reunification services.
The November 6, 2007 status review report states that the persons caring for the three children (Marcos and L. at one foster home and baby Michael at another home) all reported an interest in adopting the children for whom they were caring, the children were well adjusted in their respective placements, and they were bonded with each other. Further Marcos and L. appeared to be very bonded with their caregiver and called her "momma." Mother turned 18 years old on May 25, 2007. The Department recommended that reunification services be terminated.
Notice of the November 6, 2007 status review hearing was sent to Father at the Stockton facility on October 11, 2007. The notice states that the social worker was recommending that the court "[t]erminate Family Reunification services for both parents." Father did not appear at the hearing. The court's minute order states Father's mother and sister were present in court. The Department was ordered to reassess them for possible placement of Marcos and for taking Marcos to visit with Father, and the Department was given discretion to allow such visits. Marcos's paternal grandmother and aunt were given two-hour unmonitored weekly visits within Marcos's caretaker's schedule.
*379 The status review hearing was continued to December 11, 2007. Based on the paternal relatives' criminal backgrounds, the Department recommended that Marcos not be placed with them and that they have monitored visits with the minor. They in turn indicated they wanted to adopt the child. Mother faxed the Department a letter indicating that if the children are to be adopted she wanted their caregivers, not the paternal grandmother or aunt, to adopt them. At the December 11, 2007 hearing the court terminated the reunification services previously ordered for Mother and father Michael N., ordered the Department to initiate a home study, and set a section 366.26 hearing for April 17, 2008. A copy of the December 11, 2007 minute order was sent to Father at the Stockton correctional facility on that same day. The record does not indicate that as of that date he had made any contact with the Department or the court.
The Department's report for the April 17, 2008 section 366.26 hearing shows that on February 11, 2008, Father was personally served with notice of the hearing at his place of incarcerationthe Ventura Youth Correctional Facility in Camarillo. He signed the notice of hearing and the proof of service.[7] The notice advised him the court would terminate parental rights and place the children for adoption or order a guardianship or some other placement, and advised him he had a right to attend the hearing and present evidence and a right to an appointed attorney if he could not afford an attorney. He was further advised that the social worker recommended termination of parental rights and adoption and he was provided with a copy of the social worker's report. An order directing the warden or director of that facility to deliver Father to the Los Angeles Sheriff for transportation to the hearing is in the record but it is not signed by the court. Father did not appear at the hearing. At that point in time he had never appeared at a hearing and never made contact with the Department. The section 366.26 hearing was continued to May 22, 2008.
Marcos and L. continued to reside in the home of the foster parents who expressed an interest in adopting them and with whom they had been living since November 2006. The children viewed the foster parents as their parents and were very attached to them and to their prospective adoptive siblings. The home study was in its final stages.
On May 2, 2008, Father was served notice of the May 22, 2008 section 366.26 hearing date by mail sent to the Camarillo facility and he appeared at *380 the hearing, making his first appearance in the case. An attorney was appointed for him. He gave the court a new mailing address for himselfthe Chino Youth Correctional Facility in Chino. Father also signed a Judicial Council JV-505 form wherein he indicated his belief that he is the father of Marcos, and stated he has told his family, friends and community that he is Marcos's father and has contributed money to Marcos, and his family members have weekly visits with the child. The court indicated Father could be the presumed father of Marcos. Father stated he would be released from custody in December. The court ordered that the paternal grandmother could take Marcos to visit with Father at the Chino Youth Correctional Facility for monitored visits. The matter was continued to August 11, 2008, for a contested hearing with the court indicating it would order that Father be brought to court for that hearing.
Notice of the new hearing date (Aug. 11, 2008) was served on Father by mail sent to both his Camarillo address and his Chino address on July 8, 2008. The home study for Marcos and L. was approved. The record does not show that a removal order was made for Father for August 11, 2008, and he did not appear on that day. The section 366.26 hearing was continued to October 23, 2008, because of the illness of one of the attorneys and the court made a removal order for Father's appearance for the new hearing date. The minute order indicates Father was being detained in Ventura at the youth correctional facility there.
Father appeared in custody at the October 23, 2008 section 366.26 hearing. His attorney had filed a section 388 petition the previous day on his behalf. In the petition Father asked that the court vacate prior proper notice findings as to him,[8] hold a disposition hearing for him, find him a presumed father, find he had made an appropriate plan for Marcos, release Marcos to him, and take the section 366.26 hearing off calendar. Father provided a second JV-505 form in which he asserted he has told his family and community that Marcos is his child, the child's paternal relatives had provided him with a home and necessities of life until Marcos was detained and would like to provide him with a home again, and the relatives visit the minor weekly. The attorney indicated Father would be released from correction in December 2008 before Christmas. The section 366.26 hearing was continued to December 4, 2008, the date of the hearing on Father's section 388 petition. The court indicated it would also address Father's presumed father status claim at that same time. A statewide removal order for him was ordered.
*381 The Department prepared a report for the December 4, 2008 hearing. It shows a criminal history for Father, and Marcos's paternal grandparents. On December 4, the case was continued to December 18 and again to February 18, 2009. Father waived his appearance for the December 4 and 18 court hearings and was represented by his attorney at those hearings.
An "in and out" for Father was ordered for the February 18, 2009 hearing. He was served by mail with notice of that hearing and the social worker's report was attached to the notice. The notice was sent to the correctional facility in Chino on December 22, 2008. A report from the Department indicates that the inmate appearance request for Father for the February 18, 2009 hearing was returned to the Department because Father had been paroled. The report states that neither Father nor the paternal grandparents of Marcos had contacted the Department. None of the parents or alleged parents appeared for the February 18, 2009 section 366.26 hearing and the matter was continued to March 2, 2009. Father appeared for that March hearing and was granted twice-weekly monitored visits with Marcos. The case was continued to April 16, 2009, and Father was ordered back for that hearing without further notice. Nevertheless, notice was mailed to him at two different addresses on March 16, 2009.
Reports from the Department for the April 16, 2009 section 366.26 hearing indicate the children were all reported to be doing well in their prospective adoptive homes and well bonded to their caregivers. Mother and father Michael N. were in agreement that their children should be adopted. Father had not contacted the social worker. Father's mother told the social worker that Father was in agreement that Marcos's prospective adoptive parents should adopt him because the child had made a parental bond with the caretaker family. Father failed to appear on April 16, 2009, and his attorney requested a continuance to verify that Father did wish to relinquish parental rights. The matter was continued to April 30, 2009, to permit the attorneys to contact the various parents and obtain their signatures on relinquishment forms.
Father appeared at the April 30, 2009 hearing on the section 366.26 issue and on his own section 388 petition. Argument was taken on his petition and it was denied. Regarding the issue of permanent placement, Father called his mother as a witness and he also testified. The paternal grandmother testified Father's visits with Marcos began approximately five months prior to the hearing and he visits the child once a week for six to eight hours. The paternal grandmother stated she is always present during the visits. Father plays with Marcos, talks with him, and has sometimes fed him.
*382 Father testified he was released from the Chino Youth Correctional Facility on December 23 and he began visiting Marcos right away. He stated the visits are monitored by the paternal grandparents and last eight hours. Whereas the paternal grandmother "does most of the feeding because she's the one that cooks," he is there when Marcos is eating and Marcos is able to feed himself. He stated: "Most of the time I play and stuff." He acknowledged that the paternal grandmother is the primary caretaker during the visits. Marcos calls him "Danny," and Father tells Marcos on each visit that he is his father. He described the child as quiet and shy, and stated that Marcos is shy to walk up and so he tries to talk to Marcos to come to him. Father stated his opposition to having his parental rights terminated.
After listening to argument on the issues of adoption and termination of parental rights, the court found that Marcos and L. (and baby Michael) are all adoptable, that the permanent plan of adoption for all of the children was appropriate, and that there was no exception to termination of parental rights. Parental rights to all three of the children were terminated. On May 6, 2009, Father filed an appeal.

CONTENTIONS ON APPEAL
Father's contentions in this appeal concern notice requirements set out in the Welfare and Institutions Code, the Penal Code, and the California Rules of Court. He asserts that lack of proper notice and failure to provide him with a court form wherein he could assert a presumed father status were prejudicial to his right to assert such status and required the dependency court to vacate the disposition order and subsequent orders regarding him and to take the section 366.26 hearing off calendar.

DISCUSSION

1. Standard of Review

(1) The essence of a section 388 petition is the petitioner's assertion that she or he can demonstrate, by a preponderance of the evidence, that new evidence or a change of circumstances exists warranting a finding that the best interests of the minor child will be served if a previous order of the court is changed, modified or set aside. The petition is addressed to the dependency court's discretion and in an appeal from the order on the petition, the task of the reviewing court is to determine whether that discretion has been abused. (In re Jasmon O. (1994) 8 Cal.4th 398, 415 [33 Cal.Rptr.2d 85, 878 P.2d 1297].)
Father asserts that the question whether it would be in Marcos's best interests to grant Father's petition is different in this case because (1) Father *383 is not an offending parent (that is, not alleged in the petition to be an offending parent) and (2) there was no compliance by the dependency court and the Department with a Penal Code statute, nor with section 316.2 and a corresponding rule in the California Rules of Court (all discussed post), which require that Father be notified of his right to be present at the adjudication hearing to assert his paternity claim, and also require that he be served with form JV-505. Father asserts that in such a case where there is an alleged procedural error, the reviewing court must examine the entire record and determine whether there has been a miscarriage of justice such that the failure to comply with a mandate cannot be said to be a harmless error. (In re Jesusa V. (2004) 32 Cal.4th 588, 624 [10 Cal.Rptr.3d 205, 85 P.3d 2].)
(2) In examining this record, we find that the failure to provide Father with notice of his right to change his status from alleged father to presumed father is a harmless error; and we further find that it would not be in Marcos's best interest to set aside the disposition order so that Father's asserted presumed father status could be established and pursued. We make the same findings regarding the failure of the court to have Father at the adjudication hearing.

2. Statutes and Rules Regarding Notice in Dependency Cases

a. Alleged Fathers

(3) Father was determined to be an alleged father at the detention hearing in November 2006. There was no indication that Marcos had ever lived with him. Father's name is not on the child's birth certificate. Only presumed fathers are "parents" entitled to reunification services. Merely being a biological father is not sufficient. If a man has not legally married or attempted to legally marry the mother of his child, he can only be a presumed father if he has received the minor into his home and openly held the child out as his natural child. (In re Emily R. (2000) 80 Cal.App.4th 1344, 1354-1355 [96 Cal.Rptr.2d 285].) "While a biological father is not entitled to custody under section 361.2 [at the disposition hearing], or reunification services under section 361.5 if he does not attain presumed father status prior to the termination of any reunification period, he may move under section 388 for a hearing to reconsider the juvenile court's earlier rulings based on new evidence or changed circumstances [to revive the reunification issue]." (In re Zacharia D., supra, 6 Cal.4th at p. 454, fn. omitted.)
(4) Section 316.2, subdivision (b) states that when a man is identified as an alleged father he is to be provided, at his usual place of abode by certified mail, return receipt requested, with a notice that alleges that he is or could be the father of the minor child, and that states the child is the subject of *384 proceedings under section 300 and such proceedings could result in the termination of parental rights and adoption of the child. Additionally, the notice shall include Judicial Council form JV-505then entitled Paternity-Waiver of Rights. Form JV-505 contains important information for an alleged father. Among other things, it tells him that as an alleged father he will not receive reunification services and will not "automatically get the child to live with you or your relatives." He is also told that he can have a trial on the issue of parentage and an attorney may be afforded him if he cannot afford one for himself, and if he wants the court to decide if he is the minor's parent he should fill out form JV-505.
California Rules of Court, rule 5.635(a) provides that juvenile courts have the duty to inquire about and attempt to determine the parentage of a child for whom a section 300 petition has been filed. Subdivision (g) of that rule provides that when an alleged parent is identified, the clerk must provide such person, at the last known address by certified mail, return receipt requested, with a copy of the petition, notice of the next scheduled hearing, and form JV-505 unless certain matters (which are not relevant in the instant case) have occurred. Subdivision (h) of the rule states that when a person appears at a dependency hearing and requests a judgment of parentage on form JV-505, the court must determine if that person is the minor's biological parent, and, if requested to do so, determine if he is the child's presumed parent.
Thus, section 316.2, subdivision (b) and California Rules of Court, rule 5.635 provide an alleged father with the notice and procedural means to attempt to change his paternity status. (In re O. S. (2002) 102 Cal.App.4th 1402, 1408 [126 Cal.Rptr.2d 571].)

b. General Notice Provisions

(5) Certain statutes address service of notice on both alleged and presumed fathers. Section 290.2, subdivision (a)(2) provides for notice of the detention hearing when the addresses of alleged and/or presumed fathers are known. Here, Father's whereabouts were unknown at the time of the detention hearing.
Section 291, subdivisions (a)(2) and (c) provide that after the initial petition hearing, if the minor is detained (as Marcos was in this case), the notice of hearings to alleged and presumed fathers "shall be given ... as soon as possible, and at least five days before the hearing, unless the hearing is set less than five days and then at least 24 hours prior to the hearing." Subdivision (d) of section 291 sets out specific information that must be included in the notice and here, the appellate record shows that the Department's form notices include that information. Notice of a hearing is *385 important to an alleged father because it enables him to choose whether to appear at the hearing and assert a position on dependency matters, including establishing his paternal status. (In re O. S., supra, 102 Cal.App.4th at p. 1408.)
(6) Penal Code section 2625 provides that when a proceeding is brought under the Family Code or under section 366.26 to terminate the parental rights of a prisoner, or brought under section 300 to adjudicate whether a child of a prisoner is a dependent child of the court, the court "shall order notice of any court proceeding regarding the proceeding transmitted to the prisoner." "Service of notice shall be made pursuant to Section 7881 or 7882 of the Family Code or Section 290.2, 291, or 294 of the Welfare and Institutions Code, as appropriate." (§ 2625, subds. (b) & (c).) These provisions "encompass the jurisdictional hearing, which may precede the formal adjudication of the petition at the dispositional hearing, as well as the dispositional hearing." (In re Jesusa V., supra, 32 Cal.4th at pp. 599-600, fn. 2.) Subdivision (a) of section 2625 provides that the term "prisoner" includes persons who are wards of the Department of the Youth Authority.
Subdivision (d) of Penal Code section 2625 provides that when the court receives a statement from a prisoner or his or her attorney that the prisoner wishes to be present during the court proceedings, "the court shall issue an order for the temporary removal of the prisoner from the institution, and for the prisoner's production before the court. No proceeding may be held under ... Section 366.26 ... and no petition to adjudge the child of a prisoner a dependent child of the court pursuant to subdivision (a), (b), (c), (d), (e), (f), (i), or (j) of Section 300 ... may be adjudicated without the physical presence of the prisoner or the prisoner's attorney, unless the court has before it a knowing waiver of the right of physical presence signed by the prisoner or an affidavit signed by the warden, superintendent, or other person in charge of the institution, or his or her designated representative stating that the prisoner has, by express statement or action, indicated an intent not to appear at the proceeding." (Italics added.) In In re Jesusa V., supra, 32 Cal.4th at pages 621-622, based on the legislative history of section 2625, the court held that the word "or" in subdivision (d) that we have italicized must be read to mean "and," and must be read to mean that both the prisoner and his or her attorney must be present at the hearing at which the dependency petition is adjudicated. Additionally, the court observed that by requiring that the prisoner be present or waive his or her own presence, the trial court can be sure that the prisoner actually received the notice required by subdivision (b) of section 2625. (32 Cal.4th at pp. 623-624.)
(7) However, the Jesusa V. court stated that when the terms of the statute requiring the presence of both the prisoner and counsel are not met, the reviewing court will apply a harmless error-miscarriage of justice analysis to *386 determine whether the prisoner was prejudiced by his involuntary absence at the adjudication hearing. The court rejected the argument that a dependency court acts in excess of its jurisdiction, and thus has no power to hold an adjudication hearing, when it conducts the adjudication hearing without having both the prisoner and the attorney present. The court also observed that the interest and goal of resolving dependency matters expeditiously "would be thwarted if the proceeding had to be redone without any showing the new proceeding would have a different outcome." (In re Jesusa V., supra, 32 Cal.4th at pp. 622, 624-625.) A challenge on due process grounds was also rejected. (Id. at pp. 625-626.) The court held that prisoners do not have a constitutional right to be present at every type of hearing and what due process guarantees is notice and an opportunity for hearing that is appropriate to the nature of a case. There can be meaningful access to a court through appointed counsel where the prisoner is given an opportunity to present testimony in some form and cross-examine witnesses. (Id. at pp. 601-602.) Here, of course, Father was not present at the adjudication hearing and there was no appointed counsel for Father at that time.
(8) Subdivision (e) of Penal Code section 2625 provides that "[i]n any other action or proceeding in which a prisoner's parental ... rights are subject to adjudication, an order for the prisoner's temporary removal from the institution and for the prisoner's production before the court may be made by the superior court .... A copy of the order shall be transmitted to the warden, superintendent, or other person in charge of the institution not less than 15 days before the order is to be executed." (Italics added.) Thus, only in proceedings to adjudicate a child of a prisoner a dependent of the juvenile court or to terminate parental rights must a court order production of a prisoner for the hearing. For all other proceedings, the trial court has discretion whether to order removal of a prisoner-parent. (In re Jesusa V., supra, 32 Cal.4th at p. 599.)

c. Additional Matters Regarding Notice

(9) "[F]or purposes of due process, actual notice does not require actual receipt or actual knowledge; notice by mail or other means reasonably calculated to provide actual notice is sufficient." (In re Emily R., supra, 80 Cal.App.4th at p. 1353.)
(10) With respect to the notice requirements of California's dependency statutes, although section 291, subdivision (e) requires either personal service or service by mail, return receipt requested if the minor is detained and the person to be served was not at the initial petition hearing, there is no requirement in that provision that the social services agency receive a return receipt signed by the parent. Lack of a signed return receipt is not proof that *387 a parent did not receive a notice; Evidence Code section 641 provides a presumption that letters that are correctly addressed and properly mailed have been received in the ordinary course of mail. (In re J.H. (2007) 158 Cal.App.4th 174, 183-184 [70 Cal.Rptr.3d 1].) However, the law is otherwise regarding section 366.26 hearings. The notice provisions in section 294 regarding notice of section 366.26 hearings require that when service is by certified mail, return receipt requested, the social services agency must receive the return receipt signed by the parent. (In re J.H., at p. 184.)
When there is no attempt to serve a parent with notice the error is reversible per se; when there is error in a notice the question is whether the error is harmless beyond a reasonable doubt. (In re J.H., supra, 158 Cal.App.4th 174, 183.)

3. Father's Contentions

a. The Department's Noncompliance with Section 316.2

Father contends the trial court abused its discretion when it denied his section 388 petition asking that the disposition hearing and subsequent hearings be set aside and the section 366.26 hearing be taken off calendar. He contends he was not properly noticed of hearings, was not provided with transportation to hearings, and was not provided with notice of his right to be present to assert his paternity claim.
Regarding paternity claims, as noted above, section 316.2, subdivision (b) states that when a man is identified as an alleged father he is to be provided, at his usual place of abode by certified mail, return receipt requested, with a notice that alleges that he is or could be the father of the minor child, and that states the child is the subject of proceedings under section 300 and such proceedings could result in the termination of parental rights and adoption of the child. Additionally, the notice should include Judicial Council form JV-505. Among other things, the JV-505 form informs an alleged father that he has a right to be present at hearings to establish paternity.
Father was not provided with form JV-505 prior to the May 22, 2008 section 366.26 hearing at which he made his first appearance. Although the notices sent to him pursuant to section 291 for the postdetention hearings informed him that he had a right to appear at those hearings (including the Jan. 16, 2007 PRC hearing, and the Mar. 21, 2007 hearing at which the court made jurisdiction, adjudication and disposition findings and orders, as well as subsequent hearings), he was not informed by those notices of his right to claim a presumed father status at those hearings.
Father asserts the Department and the trial court failed, for approximately 18 months, to give him notice of his right to assert paternity and to transport *388 him to a hearing, and thereby he was denied his statutory and due process rights to the procedure by which he could establish his paternity and participate in Marcos's life during those 18 months prior to the hearing to terminate parental rights. Father also asserts the court failed to comply with subdivision (b) of California Rules of Court, rule 5.635 which provides that the trial court should make inquiries regarding parentage, such as whether the mother cohabitated with another adult at the time the child was conceived, whether the mother received support or promises of support for the minor or herself during her pregnancy or after the birth of the minor, whether a man formally or informally acknowledged paternity of the child, and whether the child has been raised in a coparenting arrangement. In the JV-505 form that Father submitted to the court in May 2008, he stated that he has provided money for Marcos, he acknowledged to his family, friends and the community that Marcos is his child, and Marcos has had weekly visits with Father's family members. In the JV-505 form that Father filed with his section 388 petition (his second JV-505 form), Father added that Marcos lived with Father's family until he was two years old.
Citing In re Paul H. (2003) 111 Cal.App.4th 753, 761 [5 Cal.Rptr.3d 1], Father asserts he was prejudiced by the failure of the court and the Department to follow section 316.2 and companion rule 5.635 of the California Rules of Court, and therefore the order terminating his parental rights must be set aside. We do not find prejudicial error. We find harmless error.
The record shows that prior to the postdetention hearings, the Department contacted Father by letter and fax but he did not contact the Department. The notices of hearings sent to Father for the January 2007 PRC hearing and the March 2007 jurisdiction/disposition hearing state that a copy of the section 300 petition was included with the notices. The section 300 petition advised Father that his parental rights could be permanently terminated in the dependency proceedings and "[t]o protect your rights, you must appear in court and answer this petition." Nevertheless, Father did not contact the Department. He was also served with notices of hearings after the March 2007 orders and findings on jurisdiction, adjudication and disposition were made. He did not contact the Department. He was served with minute orders, including orders that state he could have visitation with Marcos once he made contact the Department. He did not contact the Department. He was personally served with notice of the April 2008 section 366.26 hearing. That notice advised him the court would terminate parental rights and place the children for adoption or order a guardianship or some other placement. It also advised him, as had previous notices for previous hearings, that he had a right to attend the hearing and present evidence and a right to an appointed attorney if he could not afford an attorney. The notice also advised him that the social *389 worker recommended termination of parental rights and adoption and he was provided with a copy of the social worker's report. He did not contact the Department.
It was not until May 22, 2008, 16 months after the Department sent him a letter and a fax and first began serving notices and minute orders on him that he appeared in court. Clearly Father was given repeated notice that his claim of parentage, which he eventually made in his subsequently filed JV-505 form, was at issue in these proceedings. Yet, for 16 months he made no attempt to come into court and address parentage issues. Instead he turned the situation around and stated in his section 388 petition that "[n]o one from the Department of Children and Family Services has ever spoken to me about my child or asked me if I had made any plan for my son," and his attorney argued at the hearing on his petition that the Department had thwarted Father's efforts to make a plan for Marcos while he was in custody and become a presumed father "because they never noticed him of the proceedings." We observe that after he was paroled he failed to appear at two section 366.26 hearings.
His assertion, under oath in his section 388 petition, that he did not receive any notices until May 22, 2008, is called into question by at least the fact that he signed the notice of hearing for the April 17, 2008 section 366.26 hearing. Moreover, his mother and siblings were quite aware of the proceedings and they came to the court hearings. Further, if Father did not receive any of the notices of hearings that the Department did send to him, then had the Department actually included a form JV-505 and a section 316.2 notice with those "nonreceived" notices, Father would not have received the forms and the section 316.2 notices anyway. Father cannot have it both ways. We also observe that he submitted his first JV-505 form to the dependency court 11 months prior to the hearing at which his parental rights were terminated. Thus, the court had sufficient time to consider it.

b. The Court's Noncompliance with Penal Code Section 2625

Citing Penal Code section 2625, Father contends that at the March 21, 2007 hearing, the court erred when it proceeded to make its findings and orders respecting adjudication and disposition without him being present. Notice of that hearing was timely sent to Father at his Stockton facility address and the record shows it was received there and signed for by a Ms. Maldonado. The record also shows that the trial court timely issued an order to have Father brought from the Stockton facility to the March 21, 2007 disposition hearing but Father was not brought to the hearing because, according to a statewide tracking system, he had been transferred to another facility and there was insufficient time to bring him to court. The record *390 shows he had been transferred to a facility in Chino for the hearing. Thus, efforts were made to bring him to the March 21, 2007 hearing.
As noted earlier in this opinion, the Supreme Court held in In re Jesusa V., supra, 32 Cal.4th at page 621 et seq., that Penal Code section 2625 requires that both Father and an attorney representing him were to be at that March 21, 2007 hearing when the court made its adjudication order adjudging Marcos a dependent child of the court and its disposition, but Father was not there and because he had not yet appeared in the case, no appointed attorney was there for him either. His section 388 petition asks that the court return the case to the disposition stage as to Father, find Father a presumed father, find that Father made an appropriate plan for Marcos and release the child to him, take the section 366.26 hearing off calendar, and vacate prior proper notice findings regarding Father.
We find no abuse of discretion in the trial court's declining to grant Father's petition. As discussed below, clearly it would not be in Marcos's best interests to grant Father's request and undo most of this case, and there was no prejudicial error in the court's proceeding on March 21, 2007, with adjudication and disposition without Father and appointed counsel being at the hearing.
The jurisdiction/disposition report for the January 16, 2007 PRC, held two months prior to the March 21, 2007 jurisdiction/adjudication/disposition hearing, shows that Marcos and L. had been placed together in a foster home and the concurrent plan for the minors was adoption. By that time, Marcos's paternal grandmother, who had earlier indicated an interest in having the minor placed in her care, indicated she was no longer interested in having him placed in her home and he should remain in his current placement. By the time Father finally appeared in court in May 2008, Marcos had been living with his foster family and half sister for some 20 months. By the time Father filed his section 388 petition in October 2008, Marcos had been living with them for two years. He was bonded with them and the foster parents were eager to adopt him. He was living with persons who were there for him on a daily basis. Their home study was complete and approved. The record shows that Marcos's weekly monitored visits with Father after Father finally appeared in court were nothing more than friendly visits between the two in which Father and Marcos play. Father acknowledged at the section 366.26 hearing that Marcos "is shy to walk up to me." There is no abuse of discretion in the trial court's finding that granting Father's petition and sending this case back to the disposition stage would not be in the child's best interest.
Regarding the issue of prejudice, Father's stated plan for caring for Marcos until he could be released from custody (which he did not explain to the *391 dependency court until Oct. 22, 2008, when he filed his § 388 petition), was to have the child live with Father's "mother and family" until Father was released from custody and at that time he would also move in with the paternal relatives. But the record shows that because of the relatives' criminal records and inappropriate housing, Marcos could not have lived with them, nor could he have lived with his paternal aunt as she has a case history with the Department and already had six children residing with her.
In re J.H., supra, 158 Cal.App.4th 174 is similar to the instant case. There, the court was presented with a situation where a father made an attack on the orders that preceded his first appearance in the case. The father was incarcerated when the minor was detained. He was released from jail by the time the adjudication and disposition hearing was held but the court found there was no due diligence search for him for that hearing. Notice of subsequent hearings was also wanting. However, the court found that even if the Department did not comply with due process notice requirements, the errors were harmless because the father's assertions of how he would have seen to the child's care and maintained his parental rights did not ring true. The relative placement he would have asserted for the minor would not have materialized and he had a transient lifestyle. Further, the father "knew about the dependency proceedings at some point and chose not to contact [the Department]." (Id. at p. 185.) The court found that actual notice would not have changed the outcome of the jurisdiction and disposition hearing.
Although compliance with Penal Code section 2625 was not raised in In re J.H., the facts of that case are similar to those here in that the parent in J.H. ignored a pending dependency case just as everything indicates Father did in the instant case. Had the trial court in this case not made adjudication and disposition orders and findings at the hearing in March 2007 but instead continued that hearing over and over and over until such time as Father decided to participate in the case and counsel could be appointed for him, the record shows that Marcos would have waited a very, very long time. The law does not require children to wait so long for parents to become sufficiently interested in dependency proceedings. Nor does the record show facts that would have caused the trial court to not adjudicate Marcos a dependent child and take custody from Father and Mother if Father had received required notices and been transported to the March 2007 hearing. Father was incarcerated and could not care for Marcos at that point, Marcos's mother was not able to appropriately care for him because of her substance abuse and domestic violence relationship with the father of her other children, and Father's relatives were not permitted to take him into their homes.

*392 DISPOSITION

The order from which Father has appealed is affirmed.
Kitching, J., and Aldrich, J., concurred.
NOTES
[1] Unless otherwise indicated, all statutory references herein are to the Welfare and Institutions Code.
[2] Section 388 provides that a parent or other person who has an interest in a dependent child of the juvenile court, or the child himself or herself through a properly appointed guardian, may, upon grounds of a change of circumstances or new evidence, petition the dependency court for a hearing to, among other things, change, modify, or set aside an order of court previously made. (§ 388, subd. (a).) Subdivision (d) of section 388 provides that if it appears that the best interests of the dependent child may be promoted by the proposed change of order, the court must order a hearing held on the petition.
[3] Both Mother and Father were minors when the case was filed. A dependency petition on behalf of Mother was filed against her own mother on November 17, 2006, alleging general neglect.
[4] For purposes of this appeal we have limited the "background" portion of our opinion to those matters relevant to the issues raised by Father. However, the court wishes to acknowledge the efforts of appellate counsel representing the Department and Father in giving the court a full understanding of the casewhy it was filed; the information gained by the Department from the various persons involved with Mother's several children; the efforts that the various adults in this case made, or failed to make, on behalf of those children; and the court proceedings. A full description of the case by appellate counsel is both expected and appreciated by the court.
[5] The record contains a copy of Marcos's birth certificate. No one is listed on the certificate as being his father. The last name given for him is Mother's last name.
[6] The detention hearing on the section 300 petition filed on behalf of Mother in her capacity as a minor child was also held on November 22, 2006. It appears that the reporter's transcript in the appellate record for November 22, 2006, is for that hearing, and the minute order in the record is for the detention hearing for Marcos, L. and baby Michael.
[7] Despite Father's having signed the notice and proof of service, Father stated in his section 388 petition, under penalty of perjury, that he "was first noticed of the proceedings regarding his son on [M]ay 22, 2008."
[8] The court in Ansley v. Superior Court (1986) 185 Cal.App.3d 477, 481, 484 et seq. [229 Cal.Rptr. 771], held that a challenge to a dependency judgment on lack of due process/notice grounds is properly made by means of a section 388 petition.