Filed 9/9/15  In re S.C. CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re S.C., a Person Coming Under the Juvenile Court Law. | B259232 & B261341 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ABRAHAM A.,<br><br>Defendant and Appellant. | (Los Angeles County<br><br>Super. Ct. No. CK96827) |

APPEALS from orders of the Superior Court of Los Angeles County, Marilyn Kading Martinez, Judge.  Affirmed.

Matthew I. Thue, under appointment of the Court of Appeal, for Defendant and Appellant.

Mark J. Saladino, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Peter Ferrera, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

# INTRODUCTION

Abraham A. challenges the juvenile court's order denying his petition pursuant to Welfare and Institutions Code section 388[1] and the order terminating his parental rights to his son S.C., arguing that the Los Angeles County Department of Children and Family Services made no effort to give him notice of the proceedings. He contends that the Department had sufficient identifying information to locate him in prison prior to the jurisdiction and disposition hearing, but failed to do so.

We conclude that Abraham has not shown that the Department failed to exercise reasonable diligence in attempting to locate him, and that, in any event, any error with respect to notice was harmless beyond a reasonable doubt. The evidence shows that Abraham has never had any relationship or lived with S.C., never provided any support for the child, and never sought or achieved the status of the child's presumed father. As the child's biological father, Abraham has no right to family reunification services. The evidence also shows beyond a reasonable doubt that, given his lack of contact and participation in S.C.'s life and the fact that Abraham's term of incarceration far exceeded the statutory time for any reunification services, had Abraham received notice of the jurisdiction and disposition hearing, the result of the proceedings would not have been different. Finally, Abraham has failed to demonstrate it would be in S.C.'s best interest to reverse the juvenile court's orders. Therefore, we affirm the juvenile court's order denying Abraham's section 388 petition, and, because his appeal from the juvenile court's order terminating his parental rights is based on the same arguments, we affirm that order as well.

---

[1]     Undesignated statutory references are to the Welfare and Institutions Code.

## FACTUAL AND PROCEDURAL BACKGROUND

A.  *The Jurisdiction and Disposition Hearings*

S.C. (then six years old) came to the attention of the Department when his mother, Ashley C., left S.C and his three half-siblings at their maternal grandmother's house and disappeared without leaving a plan for the children's care or supervision. On December 6, 2012 the Department filed a section 300 petition on behalf of the children alleging that Ashley's whereabouts were unknown and her conduct placed her children at risk.

According to the detention report, the Department had previous contact with Ashley, and, at that time, she did not provide any information about the identity of S.C.'s father. The report stated that the identity and location of S.C.'s father were "unknown." At the detention hearing, the juvenile court found that Ashley's whereabouts and the identity of S.C.'s father were unknown. The court detained the children from Ashley's custody.

In the jurisdiction and disposition report, the Department indicated that it had no contact with the parents since the children's detention. S.C. told the Department's investigator that he did not know his father's name or where he lived. The children's maternal aunt reported she knew nothing about the children's fathers.

Nonetheless, the jurisdiction and disposition report identified S.C.'s father as Abraham A., but did not contain any other identifying or contact information such as Abraham's birthdate or address.[2] The Department reported it had completed a due diligence search to locate Abraham, but the Department could not find him. According to the "Declaration of Due Diligence," the Department tried searching 17 sources, including the Department Data Network, DMV records, the Internet, the telephone directory, the Department of Defense (i.e., the branches of the United States Military), Voter Registration, the Department of Justice, the California Youth Authority, the California

---

[2]     The record does not disclose how the Department discovered Abraham's identity.

3

Child Support System, the Probation Index, and the California Department of Corrections and Rehabilitation. The Declaration also disclosed that the Department could not search some of the sources, including the California Department of Corrections and Rehabilitation, because the Department did not have Abraham's birthdate.

None of the parents of the children attended the initial jurisdiction hearing. The juvenile court found that the Department had made reasonable efforts to locate Abraham, but continued the hearing for proper notice to Ashley and the father of one of S.C.'s siblings. On February 4, 2013, the date of the continued hearing, no parent appeared and the juvenile court sustained the section 300 petition, declared that S.C. was a dependent child, and removed him from parental custody. The court found Abraham was the alleged father, and noted that alleged fathers do not have the right to receive family reunification services. Although the court did not specifically order reunification services for Ashley, the court scheduled a six-month review hearing.

B.    *The Six-Month Review Hearing*

Ashley made her first appearance at the six-month review hearing on September 5, 2013, and the court appointed counsel. Ashley said Abraham was S.C.'s father, and indicated she had never been married to Abraham or anyone else.[3] She stated that Abraham had never lived with S.C., but she told the court Abraham's date of birth. Ashley told the court that Abraham was in prison and that, although for the first year or two of S.C.'s life she had contact with Abraham, she no longer had any contact with him and did not know where he was incarcerated. When the court asked Ashley if she knew of any friends or relatives who could help locate Abraham, Ashley gave the court the name of Abraham's social worker when he was a ward of the court. The court continued the six-month hearing and ordered the Department to search for Abraham in prison and

---

[3]     The Department presented a copy of S.C.'s birth certificate, which did not include the child's name or the name of the father.

prepare a statewide prison removal order for him for the next court date. The court ordered Ashley to return to court for the next hearing.

After the hearing the Department conducted another search on the website of the Department of Corrections and Rehabilitation using the California State Inmate Locater (CSIL) and found Abraham at Tehachapi State Prison. The printout of the result of the CSIL search showed only one person in the state prison system with Abraham's name. The Department initiated the process of transporting Abraham to juvenile court.

Neither Ashley nor Abraham appeared at the October 8, 2013 continued six-month hearing. The court set a hearing pursuant to section 366.26 to select a permanent plan. The court ordered the Department to prepare and submit a statewide jail removal order for Abraham to have him transported from prison to court for the next hearing.

### C. *The Section 366.26 Hearing*

Abraham was not present on January 23, 2014 at the initial section 366.26 hearing. Abraham had filed a statement indicating that he did not want to attend in person, but wanted to participate by videoconference or telephone.[4] He also asked the court to appoint counsel for him, and he asked for Ashley's address. The Department recommended termination of parental rights, reporting the children had had no parental contact during the previous six months and that it was searching for a family to adopt S.C and one of his siblings together. The court ordered the Department to transport Abraham from prison to court for the next hearing or to submit a properly executed appearance waiver, and continued the hearing.

Abraham appeared at the continued hearing on April 8, 2014. The court appointed counsel to make a "special appearance" on his behalf, and again continued the matter. Abraham also appeared at the April 30, 2014 section 366.26 hearing. His attorney made

---

[4]     A declaration from a prison official indicated that the prison could not accommodate Abraham's request to participate using "videoconference or telephonic technology."

5

a "special appearance" and indicated she had not yet been able to review the court file. The court continued the matter again.

D.    *The Section 388 Petition*

On May 27, 2014 counsel for Abraham filed a petition pursuant to section 388,[5] asking the court to set aside the jurisdiction and disposition orders and findings and to conduct a new disposition hearing, and to order a paternity test to determine whether Abraham was the biological father of S.C.  As new evidence in support of the petition, Abraham claimed that the Department had failed to provide him with notice of the jurisdiction and disposition hearing even though the Department knew who and where he was.[6]  He also complained that over a period of seven months the Department had failed to transport him to hearings.  Abraham asserted that the orders he sought in his petition were in S.C.'s best interests because S.C. "deserves to have all issues regarding paternity, custody, and services addressed in these proceedings.  He is in foster care and without an alternative permanent plan at this time.  The child would benefit from knowing who his father is and to be given an opportunity to have a relationship with his father."

The juvenile court scheduled a hearing on Abraham's section 388 petition for July 25, 2014 and ordered paternity testing for Abraham.  At the July 25 hearing, however, the court continued the matter because the paternity testing had not been completed.  Counsel for Abraham made another "special appearance" on his client's behalf "because we have an *Ansley* motion pending . . . ."

---

[5]    Counsel for Abraham filed the petition pursuant to *Ansley v. Superior Court* (1986) 185 Cal.App.3d 477, 487-488, which held that a parent can file a section 388 petition to challenge the juvenile court's jurisdiction and disposition orders based on lack of notice of the proceedings.

[6]    Abraham conceded, however, "that there may not have been sufficient evidence as to the identity of the father in that there was no party was [*sic*] present during the hearings when the court held the hearing to address dispositional issues."

6

At the September 19, 2014 continued hearing on Abraham's section 388 petition, Abraham and his attorney appeared and advised the court that the results of the paternity testing showed a 99.9 percent probability that Abraham was S.C.'s biological father. The court accepted the representation and the parties proceeded to argue the merits of the section 388 petition. The Department asserted that it had made a good faith attempt to provide notice to Abraham, and that granting the section 388 petition was not in the child's best interests because Abraham had no relationship with S.C.[7] Counsel for Abraham stated that Abraham had been in prison since 2010. Counsel for Abraham argued that, although the Department's due diligence declaration indicated it had been unable to search the California Department of Corrections and Rehabilitation records because Abraham's date of birth was unknown, the Department did not indicate that it had attempted to search using only his name.

The court denied the section 388 petition, finding that the Department had made a good faith attempt to locate Abraham and to give him notice of the proceedings. The court reasoned that there was no evidence that Abraham had made any attempt to participate in S.C.'s life and thus any delay providing him with notice did not cause him prejudice. The court stated that, although Abraham's incarceration restricted his freedom, "he's not restricted from making inquiries as to whether or not he is a father of a child." The court found that it was not in S.C.'s best interest "to go back to square one or even square two, disposition . . . . This child is at a stage of the proceedings where [he] is entitled to have permanency and stability." At the request of counsel for Abraham, the court found that Abraham was S.C.'s biological father. The court set the matter for section 366.26 proceedings.

On September 29, 2014 Abraham filed a notice of appeal of the court's order denying his section 388 petition.[8]

---

[7]     The Department reported that Ashley had stated that while S.C. was in her custody Abraham spent very little time with the child and provided no financial support for him.

7

E.    *The Section 366.26 Hearing*

Abraham did not attend the section 366.36 hearing on November 19, 2014; he had signed a form waiving his appearance.  The juvenile court asked his counsel whether Abraham "had consistent and regular contact [by] which to meet the [statutory] exception [to termination  of parental rights]."  His attorney conceded he had not.  The court found by clear and convincing evidence that the children were adoptable and that no exception to adoption applied, and terminated parental rights.  Abraham filed a notice of appeal of the order terminating his parental rights.[9]

## DISCUSSION

A.    *The Juvenile Court Did Not Err in Denying Abraham's Section 388 Petition*

Abraham argues that, because the Department made no effort to give him notice of the February 2013 jurisdiction and disposition hearing, the juvenile court erred in denying his section 388 petition and refusing to set aside its findings and orders from the hearing.  We find no reversible error in the juvenile court's order.

Section 388 allows a party to file a petition in the juvenile court to change, modify, or set aside a previous court order.  The petitioner has the burden to show, by a preponderance of evidence, that (1) there has been a change of circumstance or that there is new evidence, and, by clear and convincing evidence, that (2) the proposed change or

[8]    On February 11, 2015 this court granted Abraham's request for judicial notice of evidence of a search conducted in January 2015 using the CSIL.  The printout of that search showed that someone can search for an inmate using only the inmate number or last name.  The result of the January 2015 CSIL search showed only one person in the state prison system with Abraham's name.

[9]    On February 27, 2015 this court entered an order to consider Abraham's appeal from the order denying the section 388 petition (B259232) and his appeal from the order terminating his parental rights (B261341) together.

requested modification is in the best interests of the child. (See § 388; *In re L.S., Jr.* (2014) 230 Cal.App.4th 1183, 1193.) "The essence of a section 388 petition is the petitioner's assertion that she or he can demonstrate, by a preponderance of the evidence, that new evidence or a change of circumstances exists warranting a finding that the best interests of the minor child will be served if a previous order of the court is changed, modified or set aside. The petition is addressed to the dependency court's discretion and in an appeal from the order on the petition, the task of the reviewing court is to determine whether that discretion has been abused." (*In re Marcos G.* (2010) 182 Cal.App.4th 369, 382.) A parent may raise a due process challenge based on lack of notice by filing a section 388 petition. (*In re P.A.* (2007) 155 Cal.App.4th 1197, 1209; *In re Justice P.* (2004) 123 Cal.App.4th 181, 189; *Ansley v. Superior Court, supra,* 185 Cal.App.3d at pp. 487-488.)

1.      Abraham Did Not Waive His Right to Challenge Jurisdiction

As a preliminary matter, the Department argues that Abraham waived any objection to notice by making a general appearance and participating in the dependency proceedings. Specifically, the Department contends that on two occasions counsel for Abraham made general appearances in the juvenile court and requested an order for paternity testing, both of which manifested an intent to participate in the proceedings and waived any right to assert a defect in notice.

A parent may waive jurisdictional challenges, including lack of notice, by appearing and participating in the proceedings without objecting to notice, opposing the proceeding on the merits, or seeking affirmative relief from the court. (See *In re Z.S.* (2015) 235 Cal.App.4th 754, 771 [father waived argument that notice was defective when counsel for father appeared in the action and did not object to notice]; *In re Gilberto M.* (1992) 6 Cal.App.4th 1194, 1198 [father waived his right to assert defect by appearing at and participating in six-month review hearing, even though he was never served with the dependency petition]; see also *In re B.G.* (1974) 11 Cal.3d 679, 689 [mother waived

9

jurisdictional challenge based on lack of notice by asking the court to transfer custody of the children to her].)

Abraham, however, did not waive his due process challenge based on lack of notice. Abraham's participation in the dependency proceedings prior to filing his section 388 petition challenging notice was limited to his request for legal representation and his appointed attorney's request to review the file. In each instance counsel for Abraham represented that she was making a "special" appearance. Although the several different attorneys who appeared on Abraham's behalf after the filing of the section 388 petition (and before the section 388 hearing) did not clearly articulate the nature of their "special" appearances, those appearances in the context and circumstances of the case did not amount to a "submission" to jurisdiction or a waiver of Abraham's objection to notice. At that point in the proceedings, Abraham had already raised the lack of notice issue, and nothing in those subsequent, pre-section 388 hearing appearances evidenced an intent to abandon the section 388 petition or relinquish his due process rights to notice. Indeed, several of those appearances related to the status of the paternity testing, sought in connection with the section 388 petition.

Nor did the request for an order for paternity testing waive Abraham's objection to notice. Then only an "alleged father,"[10] Abraham sought paternity testing to determine

---

[10] In dependency proceedings, "fathers" are divided into several categories: presumed, natural/biological, or alleged. "Presumed father status ranks highest." (*In re J.H.* (2011) 198 Cal.App.4th 635, 644.) The criteria for determining presumed father status include whether the man marries or attempts to marry the child's mother, he and the mother execute a voluntary declaration of paternity, or he receives the child into his home and openly holds out the child as his natural child. (See Fam. Code, §§ 7571, 7573, 7611, subds. (a)-(d).) A presumed father has the most extensive parental rights, including the rights to receive reunification services under section 361.5 and to custody of the child under section 361.2. (*In re P.A.* (2011) 198 Cal.App.4th 974, 979-980.) In contrast, a "biological father" is a father who has had his paternity established, but who does not qualify as a presumed father (*In re J.H., supra,* 198 Cal.App.4th at p. 644.) A biological father has very limited rights: He is not entitled to custody of the child and he may not receive reunification services unless the court determines such services will benefit the child. (§ 361.5, subd. (a); *In re J.H., supra,* 198 Cal.App.4th at p. 644.) Finally, a "'man

his paternal status as well as the extent of his legal interests with respect to S.C. In contrast to the cases relied on by the Department where the parent participated in a review hearing (*Gilberto M., supra,* 6 Cal.App.4th at p. 1198) or requested custody (*B.G., supra,* 11 Cal.3d at p. 689), Abraham's request for paternity testing did not expressly acknowledge the juvenile court's jurisdiction. Rather, Abraham was seeking an opportunity to determine his paternity status. (See § 316.2; *In re J.H., supra,* 198 Cal.App.4th at p. 644.) Although, contrary to Abraham's assertion that he had to establish his biological paternity in order to challenge notice, his request for paternity testing was a limited request to determine status, not a demand for affirmative relief from the court. Indeed, if the paternity test determined that Abraham did not have a biological relationship with S.C., the juvenile court would not have had jurisdiction to make any orders binding on him.

### 2. Abraham Did Not Show a Change of Circumstance or New Evidence To Justify Granting His Section 388 Petition

Abraham argues that the new evidence or change of circumstance in support of his section 388 petition is the fact that the Department had sufficient information to locate him and give him notice of the jurisdiction and disposition hearing but did not "make any effort to notify" him of those proceedings. The evidence shows, however, that the Department made reasonable efforts to find Abraham before the hearing. Therefore, Abraham did not meet his burden of showing a change of circumstance or new evidence, and the juvenile court properly denied his section 388 petition.

---

who may be the father of a child, but whose biological paternity has not been established, or, in the alternative, has not achieved presumed father status, is an "alleged" father.'" (*In re J.H., supra,* 198 Cal.App.4th at p. 644, quoting *In re Zacharia D.* (1993) 6 Cal.4th 435, 449, fn. 15.) "Due process for an alleged father requires only that he be given notice and an opportunity to appear and assert a position and attempt to change his paternity status, in accordance with procedures set out in section 316.2. [Citation.] He is not entitled to appointed counsel or to reunification services." (*In re Kobe A.* (2007) 146 Cal.App.4th 1113, 1120.)

Before depriving a parent of his or her compelling interest in the companionship, care, and custody, and management of his or her children, the state must give the parent adequate notice and an opportunity to be heard. In order to satisfy due process, the notice must be reasonably calculated under all the circumstances to apprise interested parties of the action and afford them an opportunity to present their objections. (*In re J.H.* (2007) 158 Cal.App.4th 174, 182; *In re Claudia S.* (2005) 131 Cal.App.4th 236, 247.) Due process is satisfied where a parent cannot be located despite the exercise of "'reasonable or due diligence,'" which signifies "'"a thorough, systematic investigation and inquiry conducted in good faith."'" (*In re Claudia S., supra,* 131 Cal.App.4th at p. 247.) "[T]here is no due process violation when there has been a good faith attempt to provide notice to a parent who is transient and whose whereabouts are unknown for the majority of the proceedings. [Citations.]" (*In re Justice P., supra,* 123 Cal.App.4th at p. 188.) Where the child welfare agency cannot locate a parent after making a reasonable search effort, the failure to give actual notice does not invalidate the proceedings. (*In re Claudia S., supra,* 131 Cal.App.4th at p. 247.)

"'It is not always possible to litigate a dependency case with all parties present. The law recognizes this and requires only reasonable efforts to search for and notice missing parents. Where reasonable efforts have been made, a dependency case properly proceeds. If a missing parent later surfaces, it does not automatically follow that the best interests of the child will be promoted by going back to square one and relitigating the case. Children need stability and permanence in their lives, not protracted legal proceedings that prolong uncertainty for them. Further, the very nature of determining a child's best interests calls for a case-by-case analysis, not a mechanical rule.'" (*In re J.H., supra,* 158 Cal.App.4th at pp. 182-183, quoting *In re Justice P., supra,* 123 Cal.App.4th at p. 191.)

Substantial evidence supports the juvenile court's finding that the Department acted with reasonable diligence in searching for Abraham prior to the jurisdiction and disposition hearing. In December 2012, when the Department first learned about the children, Ashley's whereabouts were unknown, and the Department therefore asked S.C.

and other family members about the identity and location of S.C.'s father. The Department learned Abraham's name, but nothing more. According to the declaration of due diligence, the Department subsequently conducted a search for Abraham using his first and last name in 17 sources, some of which, including the records of the Department of Corrections and Rehabilitation, purportedly could not be searched without a date of birth.

Abraham challenges the Department's exercise of diligence. Based on a printout showing the search fields for the CSIL on the Department of Corrections and Rehabilitation website and a printout of the result of the search conducted in January 2015, Abraham maintains that a search using the CSIL does not require a date of birth in order to search for inmates in state prisons. He argues that these printouts show that, had the Department searched for him using only his first and last name, the Department should have been able to locate him in prison and serve him with notice of the proceedings in 2012.

Abraham, however, has not presented any evidence in support of his argument. His contention is based on an unsubstantiated belief that the prison locator search tool on the Department of Corrections and Rehabilitation website in 2012 was the same as it is in 2015. There is no evidence in the record regarding the required search fields of the CSIL in 2012 or even in 2013 when the Department located Abraham in Tehachapi State Prison. Indeed, because by the time the Department found Abraham in prison in September 2013 Ashley had already provided the Department with Abraham's date of birth, it is not clear that in September 2013 the Department could have found a prisoner using the CSIL without a date of birth. Therefore, Abraham has not shown that the Department "failed to make any meaningful effort to locate" him. (See *In re Emily R.* (2000) 80 Cal.App.4th 1344, 1353 [alleged father bears burden of showing search method would have some chance of success].) Therefore, the juvenile court did not err in declining to set aside its prior finding of due diligence.

Moreover, even if the court erred in denying Abraham's section 388 petition, defects in notice do not automatically require reversal. "[A] failure to give notice in

dependency proceedings is subject to a harmless error analysis." (*In re A.D.* (2011) 196 Cal.App.4th 1319, 1325-1327; see *In re James F.* (2008) 42 Cal.4th 901, 918 (*James F.)* ["[i]f the outcome of a proceeding has not been affected, denial of a right to notice and a hearing may be deemed harmless and reversal is not required"].)[11] Unless the child welfare agency makes no attempt to give the parent notice, errors in notice are subject to the harmless beyond a reasonable doubt standard of prejudice. (*In re Marcos G., supra,* 182 Cal.App.4th at p. 387; *In re J.H., supra*, 158 Cal.App.4th at p. 183.)

Abraham argues that, had the Department given him notice earlier, he could have appeared sooner and "may have been able to present evidence to elevate his paternity status" and may have received reunification services. He also asserts that, had he appeared earlier in the proceedings and been recognized as the biological father, the Department and the court may have been "motivated . . . to consider paternal relatives as possible placement options."

Abraham's arguments are speculative. He does not argue how and based on what evidence he would have qualified for elevation to the status of a "presumed father" at any time during the dependency proceedings. Although Abraham was aware S.C. existed and was in contact with Ashley before he was incarcerated, Abraham had no relationship whatsoever with S.C, provided no support for the child, was never married to Ashley, and never received S.C. into his home and openly held out S.C. as his natural child. Abraham's name does not appear on S.C.'s birth certificate and Abraham did not sign a voluntary declaration of paternity for S.C. There is no evidence that, after his incarceration, Abraham made any effort to contact S.C., and he never made a formal request in the dependency proceedings that the court find he was a presumed father. At most Abraham is S.C.'s biological father.

---

[11]     The Supreme Court in *James F.* did not decide the issue of whether "the appropriate harmless error standard is harmless by clear and convincing evidence rather than harmless beyond a reasonable doubt." (*James F., supra,* 42 Cal.4th at p. 911, fn. 1.)

14

In addition, Abraham has not shown that, had the juvenile court elevated his status to biological father, the court would have exercised its discretion and ordered reunification services. (§ 361.5, subd. (a); see *In re J.H., supra,* 198 Cal.App.4th at p. 644 [the juvenile court may order reunification services for a biological father if the court determines that the services will benefit the child].) Abraham does argue that reunification services would have served S.C.'s best interests. Given the absence of any relationship between Abraham and S.C., the fact that his term of incarceration exceeded the statutory time limit for reunification services, and his prior failure to support the child or establish his paternity, there is no reasonable likelihood that the court would have ordered reunification services for Abraham. (See e.g., *In re Kobe A., supra,* 146 Cal.App.4th at pp. 1123-1124 [any error in notice to father of the dependency proceedings was harmless where father was incarcerated beyond the maximum period for reunification, had no relationship with the child, provided no financial support, and made no effort to maintain contact with the child]; cf. *In re Paul H.* (2003) 111 Cal.App.4th 753, 761-762 [vacating order terminating parental rights based on lack of notice to father where record contained "minimal information" concerning the father's circumstances and background, and concluding "we cannot assume . . . that had [the alleged father] established his paternity and been appointed counsel, he would not have received reunification services."].)

Finally, Abraham never presented any evidence that there were any paternal relatives who might have had an interest in placement. Had there been any such relatives, Abraham presumably would have mentioned them in court proceedings or to the Department.

3.  Abraham Did Not Show Granting His Section 388 Petition Was in the Best Interests of S.C.

Even if Abraham had made a sufficient showing of new evidence or a change of circumstance under section 388 based on his claim he did not receive proper notice of the proceedings, Abraham also had to demonstrate that vacating the orders and returning the

15

case to the beginning was in S.C.'s best interest. (§ 388; *In re Justice P., supra,* 123 Cal.App.4th at p. 190.) He failed to do so.

As discussed, Abraham had no bond or relationship with S.C. He never played a parental role in the child's life and never provided him with any support. Abraham was essentially a stranger to the child. Abraham's effort to vacate the jurisdiction and disposition orders and to return the case to its inception would have delayed and postponed permanency and stability for a child who had been in foster care for almost two years. Abraham did not show that such a result would serve S.C.'s best interests.

> B. *The Juvenile Court Did Not Err in Terminating Abraham's Parental Rights*

Abraham argues that the juvenile court's error in denying his section 388 petition caused the court to err in subsequently terminating his parental rights. (See *In re Esperanza C.* (2008) 165 Cal.App.4th 1042, 1062-1063 [reversal of order dismissing section 388 petition required reversal of a subsequent judgment terminating parental rights]; *In re Lauren R.* (2007) 148 Cal.App.4th 841, 861 ["[b]ecause it is necessary to restore all parties to their prior positions, the orders terminating parental rights are also reversed"].) Abraham does not challenge the juvenile court's finding that S.C. was adoptable. Based on the finding of adoptability, the juvenile court had to terminate Abraham's parental rights unless the court found one of the statutory exceptions to the preference for adoption applied. (§ 366.26, subd. (c)(l)(B)(i)-(vi).) Abraham did not, however, assert that any of these statutory exceptions applied. Abraham's only argument is that the juvenile erred in denying his 388 petition. Because the court did not err when it denied Abraham's section 388 petition, Abraham's challenge to the termination order fails.

16

**DISPOSITION**

The orders of the juvenile court are affirmed.

SEGAL, J.

We concur:

PERLUSS, P. J.

ZELON, J.