Filed 8/19/14  In re M.T. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re M.T., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E060637 |
| Plaintiff and Respondent, | (Super.Ct.No. RIJ112684) |
| v. | OPINION |
| S.T., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Harry A. Staley, Judge. (Retired judge of the Kern Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Reversed with directions.

Jack A. Love, under appointment by the Court of Appeal, for Defendant and Appellant.

Pamela J. Walls, County Counsel, and Julie Koons Jarvi, Deputy County Counsel, for Plaintiff and Respondent.

Defendant and appellant S.T. (Mother) appeals from the juvenile court's orders of February 13, 2014, denying her petition under Welfare and Institutions Code section 388,[1] terminating her parental rights to her eight-month-old son, M.T., and freeing M.T. for adoption by his paternal grandmother. Specifically, mother argues: (1) the Riverside County Department of Public Social Services (DPSS) did not comply with the notice provisions of the Indian Child Welfare Act (ICWA); (2) the court abused its discretion when it denied her section 388 petition; and (3) the court violated mother's right to due process when it reduced her visitation with M.T. at the jurisdiction and disposition hearing held on October 7, 2013, at which it denied her reunification services and set the section 366.26 hearing. As discussed below, we conditionally reverse the orders and issue a limited remand so DPSS can properly notice all identified Native American tribes, but otherwise affirm the court's orders.

### FACTS AND PROCEDURE

*First Prior Dependency—2006-2008*

At the time he was detained, M.T. had four half-siblings.[2] The oldest two were detained in 2006 because mother and the father of one of the children engaged in

---

[1] All section references are to the Welfare and Institutions Code unless otherwise indicated.

[2] M.T. is the only subject of this appeal.

domestic violence in the children's presence and because mother was transient and unable to provide a stable home. Mother received reunification services. Mother's third child was born in 2007 and, after a section 300 petition was filed, the infant was declared a dependent child and placed in mother's care on family maintenance. In 2008, the two older children were returned to mother's care and later that year the dependency regarding all three children was terminated and mother was given full custody.

*Second Prior Dependency—2010-2013*

In December 2010, a new petition was filed regarding the three children in Los Angeles County because mother and one of the fathers physically abused the children, mother abused drugs and alcohol, and mother was incarcerated for driving under the influence. Mother received reunification services and transferred first to San Diego County and then to Riverside County. In November 2012, the juvenile court terminated mother's reunification services. In 2013, the three children were placed into guardianship with two separate family members.

*Third Prior Dependency—2011-2013*

In March 2011, mother gave birth to a fourth child, J.T., while in a prison treatment program, and she received family maintenance services for him. In March 2012, J.T. was detained when mother was incarcerated for an outstanding warrant. J.T. was returned to mother ten days later on family maintenance. In July 2012, J.T. was again detained after mother got into a physical altercation with another resident in her transitional living facility. In August 2012, J.T. was returned to mother's care on family

maintenance.  In February 2013, J.T.'s dependency was terminated and mother was given full custody.

*M.T.'s Detention—July 2013*

In July 2013, when M.T. was about one month old, he and J.T. were detained after mother called police during a physical altercation with M.T's father.[3]  During the altercation, M.T. fell off the bed, which was about two and one-half feet from the ground.  Mother admitted to drinking alcohol earlier in the evening and driving with the two children while drunk.  DPSS detained the children.

In the section 300 petition filed on July 23, 2013, DPSS alleged as to mother regarding M.T. "failure to protect" under subdivision (b) in that she engaged in domestic violence in the child's presence, has a history of engaging in domestic disputes in the presence of her older children, has a history of abusing controlled substances including crack cocaine and alcohol and does so while caring for M.T., suffers from unresolved mental health issues including manic depression and bipolar disorder but fails to seek treatment or take prescribed medication, has a history of criminal activity including drug-related and child endangerment charges, and has an extensive child welfare history regarding her older children.  DPSS also alleged "abuse of sibling" under subdivision (j), in that M.T.'s half-sibling, J.T., has been abused or neglected and this places M.T. at substantial risk of similar abuse.

---

[3]  M.T.'s father (father) is not the father of any of M.T.'s four half-siblings.

On July 24, 2013, the juvenile court ordered M.T. detained and granted mother visits twice each week for two hours.

DPSS filed amended petitions documenting the physical abuse to J.T. and then deleting the allegations of physical abuse to J.T., mother's mental health issues, and child endangerment charges.

*Jurisdiction and Disposition—October 2013*

On October 7, 2013, mother submitted on the amended section 300 petition and the juvenile court sustained the petition. Although mother asked the court to continue reunification services, the court followed the DPSS recommendation to deny services under section 361.5, subdivision (b)(10), because mother had failed to reunify with M.T.'s three oldest siblings. The court set a section 366.26 hearing and limited mother's visits with M.T. to once per month.

*Section 388 Petition and Section 366.26 Hearing—January/February 2014*

Mother filed a section 388 petition on January 31, 2014. At the section 366.26 hearing set for February 4, 2014, mother set the matter for a contested hearing. Mother asked for more visitations in the meantime, but the juvenile court did not change the visitation order.

The combined hearing on the section 388 petition and the section 366.26 matter was held on February 13, 2014. Mother testified about the services she had completed, her visits with M.T., and her relationship with him. The juvenile court denied the section 388 petition, stating it "would find that these do represent changed circumstances, but the

Court's not able to say that this finding of changed circumstances in an indication that the Court has any reasonable belief that her future course of conduct or future history, if you will, is going to be any different than her past history."

During the section 366.26 part of the proceedings, mother objected to the DPSS recommendation that the court terminate her parental rights. Mother asked the court to order legal guardianship instead. M.T.'s attorney joined in the DPSS recommendation. The court terminated mother's parental rights and set adoption with the paternal grandmother as M.T.'s permanent plan.

This appeal followed.

### DISCUSSION

1.      *Limited Remand for ICWA Notice to Blackfoot and Cherokee Tribes*

Mother argues, DPSS concedes, and we agree, that the juvenile court erred when it terminated mother's parental rights without first providing notice to the Blackfoot tribes that mother eventually identified. In addition, DPSS points out that the record is not clear that proper notice was sent to the Cherokee tribes regarding M.T., and so we direct the court to ensure that DPSS also sends proper notice to the Cherokee tribes.

"Congress passed the ICWA in 1978 'to promote the stability and security of Indian tribes and families by establishing minimum standards for removal of Indian children from their families and placement of such children "in foster or adoptive homes which will reflect the unique values of Indian culture . . . ."' [Citations.]" (*In re Gabriel G.* (2012) 206 Cal.App.4th 1160, 1164.) If the court "knows or has reason to know that

6

an Indian child is involved" in a dependency proceeding, the social worker or probation officer shall provide notice to the child's tribe. (§§ 224.2, subd. (a), 224.3, subd. (d).)

Pursuant to section 224.2, subdivision (a) "(3) Notice shall be sent to all tribes of which the child may be a member or eligible for membership, until the court makes a determination as to which tribe is the child's tribe in accordance with subdivision (d) of Section 224.1, after which notice need only be sent to the tribe determined to be the Indian child's tribe. [¶] (4) Notice, to the extent required by federal law, shall be sent to the Secretary of the Interior's designated agent, the Sacramento Area Director, Bureau of Indian Affairs. If the identity or location of the parents, Indian custodians, or the minor's tribe is known, a copy of the notice shall also be sent directly to the Secretary of the Interior, unless the Secretary of the Interior has waived the notice in writing and the person responsible for giving notice under this section has filed proof of the waiver with the court." (§ 224.2, subds. (a)(3) & (4).)

Notice must include "specified" information, including "[a]ll names known of the Indian child's biological parents, grandparents, and great-grandparents, or Indian custodians, including maiden, married and former names or aliases, as well as their current and former addresses, birthdates, places of birth and death, tribal enrollment numbers, and any other identifying information, if known." (§ 224.2, subd. (a)(5)(C).)

"If the court or the Department 'knows or has reason to know that an Indian child is involved, the social worker . . . is required to make further inquiry regarding the possible Indian status of the child, and to do so as soon as practicable, by interviewing the

7

parents, Indian custodian, and extended family members . . . , contacting the Bureau of Indian Affairs . . . [,] the tribes and any other person that reasonably can be expected to have information regarding the child's membership status or eligibility.' [Citation.] The circumstances that may provide reason to know the child is an Indian child include, but are not limited to, 'A person having an interest in the child, including the child, an officer of the court, a tribe, an Indian organization, a public or private agency, or a member of the child's extended family provides information suggesting the child is a member of a tribe or eligible for membership in a tribe or one or more of the child's biological parents, grandparents, or great-grandparents are or were a member of a tribe.' [Citation.]" (*In re Gabriel G., supra,* 206 Cal.App.4th at pp. 1165-1166.)

Because "'failure to give proper notice of a dependency proceeding to a tribe with which the dependent child may be affiliated forecloses participation by the tribe, [ICWA] notice requirements are strictly construed.'" (*In re Karla C.* (2003) 113 Cal.App.4th 166, 174; see also *In re Robert A.* (2007) 147 Cal.App.4th 982, 989.) The juvenile court's findings whether proper notice was given under ICWA and whether ICWA applies to the proceedings are reviewed for substantial evidence. (*In re E.W.* (2009) 170 Cal.App.4th 396, 403-404.)

Here, mother initially checked the box on her form ICWA-020 Parental Notification of Indian Status, filed July 24, 2013, that indicated "I may have Indian ancestry," but left blank the spaces for indicating the tribe or band. At the detention hearing held on that date, the juvenile court found there was reason to believe M.T. may

8

be of Indian ancestry and ordered DPSS to provide notice to the Bureau of Indian Affairs (BIA). On August 15, 2013, DPSS sent notice to the BIA showing the Indian tribe as "unknown." The following day, mother told the social worker that there might be Cherokee ancestry on her mother's side of the family and Blackfoot ancestry on her father's side. No additional notices were sent for M.T.[4]

Because DPSS did not notify any Cherokee or Blackfoot tribes regarding M.T. after mother told the social worker that she might have such heritage, we conditionally reverse the court's orders terminating parental rights and remand the matter with directions to the juvenile court to ensure that DPSS complies with the notice requirements of the ICWA and related California law. (*In re Francisco W.* (2006) 139 Cal.App.4th 695, 704-705, 711.)

2. *The Court Properly Denied the Section 388 Petition to Modify Court Order.*

Mother argues the juvenile court erred when it denied her section 388 petition because she established both a change of circumstances and that it was in M.T.'s best interest for her to have reunification services. As discussed below, we affirm the court's order denying mother's section 388 petition.

"Section 388 allows a person having an interest in a dependent child of the court to petition the court for a hearing to change, modify, or set aside any previous order on

_____

[4] The record shows that DPSS sent ICWA notice to three Cherokee tribes on August 15, 2013, regarding M.T.'s half-sibling, J.T. The record is unclear, but does not affirmatively show that DPSS sent notice to the Cherokee tribes regarding M.T.

9

the grounds of change of circumstance or new evidence." (*In re Anthony W.* (2001) 87 Cal.App.4th 246, 250.) "'Specific allegations describing the evidence constituting the proffered changed circumstances or new evidence' is required. [Citation.]" (*Ibid*.) "[T]he change of circumstances or new evidence must be of such significant nature that it requires a setting aside or modification of the challenged prior order." (*Ansley v. Superior Court* (1986) 185 Cal.App.3d 477, 485.)

We review the juvenile court's denial of a section 388 petition for abuse of discretion. (*In re Anthony W., supra*, 87 Cal.App.4th at p. 250; see also *In re Marcos G.* (2010) 182 Cal.App.4th 369, 382.)

Here, mother filed her section 388 petition on January 31, 2014. She asked the court to change its order of October 7, 2013, denying her reunification services. Mother described her changed circumstances as having completed an inpatient substance abuse program and testing negative throughout, and completing an "aftercare, parenting and an aggressive replacement program." Finally, mother stated she had attended NA/AA meetings and was participating in a domestic violence program. Regarding how the proposed change would be in the best interest of M.T., mother stated that she had stable housing and employment, had maintained visitation and had a bond with M.T., and that ordering reunification services would "strengthen the existing parent-child relationship."

At the hearing on the petition, held on February 13, 2014, mother testified that she completed a substance abuse and aftercare program, and that she had consistently tested negative during that time. She stated she would be willing to submit to a hair follicle test.

10

She also regularly attended NA/AA meetings and had a sponsor. She also completed an anger management class. Mother testified that she was working two jobs and was in school. Mother completed a parenting program, and implemented what she learned in that program during her visits with M.T. Mother was at that time participating in a domestic violence prevention program. Mother testified that she was living in a one-bedroom home and could financially support M.T.

On cross-examination, mother admitted that she had previously attended a domestic violence class, prior to the incident of domestic violence that precipitated this dependency. Mother also stated that she had previously completed substance abuse treatment. On questioning by the juvenile court, mother stated she did not attend any NA/AA meetings from December 19 through January 22 because she had been working a lot and spending time visiting her other children.

The court denied mother's petition, reasoning that mother's long history of completing services and then relapsing and losing her children precluded both a finding of truly changed circumstances and a finding that offering reunification services would be in M.T.'s best interest.

We cannot conclude that the juvenile court abused its discretion when it denied mother's section 388 petition. The court denied mother reunification services at the October 7, 2013, jurisdiction and disposition hearing under section 361.5, subdivision (b)(10), because mother had failed to reunify with M.T.'s three oldest siblings. At that time, mother was already enrolled in a substance abuse program, and was testing negative

11

for substances and attending NA/AA meetings. The only thing that had changed at the time the court denied mother's section 388 petition was that mother had continued on this course for an additional four months and had also completed an anger management class and a parenting class, and was attending a domestic violence prevention class. However, as DPSS pointed out, at the time the court denied mother reunification services, she had already obtained those same services in previous dependencies, and each time had returned to her long-term behavior of abusing alcohol and engaging in relationships involving domestic violence, which resulted in the four separate dependencies that were necessary to safeguard her children from abuse and neglect. This set of circumstances prevents us from finding, as mother so asks, that the juvenile court abused its discretion when it found mother's petition did not establish changed circumstances or that reunification was in M.T.'s best interest.

### 3. *Visitation Order Not Appealable*

Finally, mother argues the juvenile court violated her right to due process when it reduced her visitation with M.T. from twice per week to once per month. Mother asserts this order prevented her from establishing the parent-child beneficial relationship exception to the presumption for adoption that could have helped her avoid termination of her parental rights.

As DPSS points out, the juvenile court made this order reducing visitation at the hearing that was held on October 7, 2013, at which time the court set the section 366.26 hearing to determine a permanent plan for M.T.

"When at the disposition hearing the juvenile court denies family reunification services and sets a section 366.26 hearing, '"the traditional rule favoring the appealability of dispositional orders yields to the statutory mandate for expedited review."' [Citations.] 'An order setting a section 366.26 hearing "is not appealable; direct appellate consideration of the propriety of the setting order may be had only by petition for extraordinary writ review of the order. [Citations.]" [Citation.]' When the juvenile court orders a hearing under section 366.26, the court must orally advise all parties present that if a party wishes to preserve any right to review on appeal of the order setting the hearing under section 366.26, the party is required to seek an extraordinary writ. [Citations.] [Citation.] This rule applies to all orders . . . made contemporaneously with the setting of the hearing. [Citations.]" (*Maggie S. v. Superior Court* (2013) 220 Cal.App.4th 662, 671.)

Mother did not challenge by extraordinary writ the court's order reducing her visitation with M.T. This order was made in conjunction with the court's order setting the section 366.26 hearing. Therefore, the visitation order is not appealable.

### DISPOSITION

The February 13, 2014, orders terminating mother's parental rights and freeing M.T. for adoption are conditionally reversed and a limited remand is ordered as follows. Upon remand, the court shall direct DPSS to send ICWA notices in accordance with the ICWA and California law. DPSS shall thereafter file certified mail return receipts for the ICWA notice, together with any responses received. If no responses are received, DPSS

shall so inform the court.  The court shall determine whether the ICWA noticing has been completed and whether M.T. is an Indian child.  If the court finds M.T. is not an Indian child, it shall reinstate the orders terminating parental rights and freeing M.T. for adoption.  If the court finds M.T. is an Indian child, it shall conduct all further proceedings in compliance with the ICWA and related law.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

<u>RAMIREZ</u>
P. J.

We concur:

<u>KING</u>
J.

<u>CODRINGTON</u>
J.

14