Filed 11/20/25  In re N.T. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re N.T., et al., Persons Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>L.T.,<br><br>    Defendant and Appellant. | G065673<br><br>(Super. Ct. Nos. 23DP1178 & 23DP1179)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Robert J. Goodkin, Judge. Conditionally reversed and remanded with directions.

Timothy O'Crowley, under appointment by the Court of Appeal, for Defendant and Appellant.

Leon J. Page, County Counsel, Debbie Torrez and Aurelio Torre, Deputy County Counsels, for Plaintiff and Respondent.

No appearance for Minors.

\* \* \*

L.T. (Mother) appeals from the juvenile court's order terminating her parental rights to minor children N.T. and L.T. following a Welfare and Institutions Code section 366.26 hearing (366.26 hearing).[1] Mother contends the order should be reversed because she did not receive proper notice of the 366.26 hearing. As discussed below, we conclude any notice error was harmless beyond a reasonable doubt. Additionally, Mother contends the order should be conditionally reversed because SSA's inquiry under the California Indian Child Welfare Act (ICWA), § 224 et seq., was inadequate. As discussed below, we agree and will conditionally reverse. We remand for SSA to conduct an adequate ICWA inquiry.

STATEMENT OF THE CASE

I.

DEPENDENCY PROCEEDINGS

On October 27, 2023, SSA filed a dependency petition pursuant to section 300, subdivisions (b)(1) and (g), alleging there was a substantial risk N.T. and L.T. would suffer serious physical harm or illness by the parents' inability to provide care due to mental illness or substance abuse and failure

---

[1]All further statutory references are to the Welfare and Institutions Code, unless otherwise stated.

Because Mother and her youngest child share the same initials, for clarity, we will refer to appellant as "Mother" and the child as "L.T."

to provide caregivers with support. The petition alleged Mother had unresolved mental health issues and prior history of domestic abuse. The whereabouts of the presumed fathers were unknown.

At the October 30 detention hearing, the juvenile court found SSA made a prima facie showing under section 319 and the minors came within section 300. The same day, Mother filed a notification of mailing address form indicating a Santa Ana, California mailing address. On November 14, Mother filed a notification of mailing address form with a new Santa Ana address.

At the December 19 jurisdiction/disposition hearing, the juvenile court sustained the dependency petition, and approved the case plan, which included reunification services for Mother.

Before the six-month review hearing, scheduled for October 14, 2024, SSA filed two addendum reports recommending the juvenile court terminate reunification services and schedule a section 366.26 selection and implementation hearing. SSA reported that Mother was currently unhoused, unemployed, and appears to have unresolved mental health issues. Mother has not enrolled in services, except for domestic violence classes. She tested positive on five drug tests, and missed 12 random drug tests. Her visitation was inconsistent.

The juvenile court continued the six-month review hearing to October 21, to accommodate Mother's work. On October 21, Mother's counsel informed the court that Mother was present earlier in the day but no longer present in court. Counsel, however, was authorized to proceed. Subsequently, the court declared the child a dependent of the court and terminated reunification services. It set a 366.26 hearing for February 18, 2025. It

ordered SSA to provide notice, and the court clerk to send various documents, including the minute order, to Mother at the address on file.

That same day, the juvenile court adopted a "negotiated agreement, as to the [M]other only." The attached agreement was undated but signed by Mother. It provided that "SSA shall keep any existing referrals for the services/programs open until the initial hearing date for the 366.26 hearing set on 02/18/2025."

On November 18, 2024, SSA also prepared and later submitted two declarations of due diligence recounting its attempts to locate and notify the fathers. At a November 20 hearing, the juvenile court found SSA exercised due diligence in its efforts to notify N.T.'s father, that it would attempt to personally serve L.T.'s presumed father, and that "Mother was present on 10-21-24 and was ordered back for the (c) 366.26 [*sic*] on 2-18-25."

On November 25, 2024, SSA mailed notice of the 366.26 hearing to Mother's last known address on file, but did not include a part of that address, specifically "Bed #D-17." On December 16, 2024, SSA submitted a declaration that notice of the 366.26 hearing had been mailed to L.T.'s presumed father's addresses. Additionally, on December 4, a social worker was able to inform the presumed father over the telephone about the hearing.

At the January 23, 2025 notice review hearing, the juvenile court found the fathers were noticed of the 366.26 hearings. As to Mother, the court found she was present on October 21, 2024 and that notice also was sent to her via first class mail.

In its section 366.26 report, SSA set forth a summary of the facts in the case. It reported that on October 21, 2024, the juvenile court terminated Mother's reunification services and approved a "soft 366.26 for [M]other." However, "[M]other has not completed any of her services as those

4

encompassed in the negotiation agreement." Her visitation also has been inconsistent during this time. SSA recommended the court terminate parental rights and place the minors for adoption.

On February 18, 2025, the juvenile court continued the 366.26 hearing to March 18. Mother was present for the 366.26 hearing on March 18. The court denied her motion to change its order terminating her services. It continued the 366.26 hearing to April 17.

On April 17, the 366.26 hearing was continued to June 5 due to unavailability of minors' counsel. Mother was not present. On June 5, the hearing was continued to June 16 at the request of Mother's counsel. Mother again was not present.

At the 366.26 hearing on June 16, the parents were not present. Counsel for the parents moved to continue the hearing, citing their inability to contact their clients since June 5. The juvenile court denied the motions to continue, finding a continuance would not be in the minors' best interest, and that counsel had made every effort to contact their clients. The court found Mother received proper notice. It terminated parental rights, and ordered the minors placed for adoption.

## II.

## ICWA

On October 27, 2023, SSA questioned Mother about Indian ancestry, and she denied any.[2] SSA also questioned non-related extended family members (NREFMs) who were taking care of the minors, and they

---

[2] ICWA uses the term "Indian," although California courts and SSA have used other terms such as "Native American" or "American Indian." For consistency, we will use the term "Indian." No disrespect is intended. (See *In re Dezi C.* (2024) 16 Cal.5th 1112, 1125, fn. 1 (*Dezi C.*).)

denied any Indian ancestry. They also denied that either Mother or L.T.'s alleged father had any Indian ancestry. SSA could not contact either of the alleged fathers.

At the October 30 detention hearing, Mother appeared and denied any Indian ancestry. The same day, she filed an ICWA-020 form, stating she has no Indian ancestry. L.T.'s alleged father also appeared and denied any Indian ancestry. He also filed an ICWA-020 form denying any Indian ancestry.

In November 2023, before the jurisdiction/disposition hearing, SSA reconfirmed with Mother, the NREFMs and L.T.'s alleged father that neither Mother nor alleged father had Indian ancestry.

In the March 20, 2024 Interim Review report, SSA stated it questioned Mother and the NREFMs about Indian ancestry multiple times, and all denied any knowledge of Indian ancestry.

At the October 21 2024 six-month review hearing, the juvenile court set a November 20 hearing to address ICWA. In connection with that hearing, on November 13, SSA asked Mother for the contact information of the alleged fathers, her parents, and any of her siblings. Mother reported she did not have the contact information for the alleged fathers and she has no siblings. On November 14, Mother provided the names of her parents and a phone number for her mother, but stated she did not have a phone number for her father. That same day, SSA called the phone number for the maternal grandmother, but no one answered. SSA left a detailed voicemail, but received no response.

In its 366.26 report, SSA stated it contacted Mother, L.T.'s presumed father, and the NREFMs in January 2025, and questioned them about the parents' Indian ancestry. All denied any knowledge of Indian

6

ancestry. SSA also attempted to contact the maternal grandmother on January 23, but the number was out of service.

At the 366.26 hearing on June 16, 2025, the juvenile court found ICWA did not apply.

DISCUSSION

I.

NOTICE

Because the interest of parents in "the companionship, care, custody, and management of [their] children is a compelling one, . . .the state, before depriving a parent of this interest, . . . must afford [them] adequate notice and an opportunity to be heard." (*In re Emily R.* (2000) 80 Cal.App.4th 1344, 1351 (*Emily R.*).) Notice must be reasonably calculated, under all the circumstances, to apprise the parents of the pendency of the action and afford them an opportunity to present any objections. (*Ibid.*, citing *Mullane v. Central Hanover Tr. Co.* (1950) 339 U.S. 306, 314.) If supported by substantial evidence, a trial court's findings that notice is proper will be upheld on appeal. (*Emily R.* at p. 1354.) Whether the notice actually given satisfied statutory and constitutional requirements is a question of law, which we review de novo. (See *In re Marriage of Lusby* (1998) 64 Cal.App.4th 459, 472.)

Mother argues the juvenile court erred in finding she was properly notified of the 366.26 hearing because the court was mistaken that she was present at the October 21, 2024 hearing and SSA mailed the notice to an incomplete address. We conclude Mother received actual notice of the initial and continued 366.26 hearing dates, and any notice error was harmless beyond a reasonable doubt.

7

As to notice of the continued dates for the 366.26 hearing, because Mother's counsel was present and Mother's whereabouts were known, no further notice was required. (§ 294, subd. (j).) As to notice of the initial 366.26 hearing date, the record indicates the notice to Mother failed to strictly comply with the requirements of section 294. Specifically, she was not present when the juvenile court set the initial hearing date, and the notice was mailed to an incomplete address. Nevertheless, any notice error was harmless beyond a reasonable doubt. (See *In re Marcos G.* (2010) 182 Cal.App.4th 369, 387 ["When there is no attempt to serve a parent with notice the error is reversible per se; when there is error in a notice the question is whether the error is harmless beyond a reasonable doubt"].) Here, the record shows Mother had actual notice of the initial hearing date. On or before October 21, 2024, she signed the negotiated statement that clearly states the 366.26 hearing would be held on February 18, 2025. Additionally, Mother was present for the continued 366.26 hearing on March 18, at which time she moved for a change order. Her parental rights were not terminated until June 16. On this record, any error was harmless beyond a reasonable doubt.

## II.

## ICWA

Mother also argues the juvenile court erred in finding that ICWA did not apply. Specifically, she argues the court could not rely on SSA's ICWA inquiry, which she contends was inadequate.

The juvenile court may find ICWA does not apply to a child's proceeding if it finds SSA's "inquiry and due diligence were 'proper and adequate,' and the resulting record provided no reason to know the child is an Indian child." (*Dezi C.*, *supra*, 16 Cal.5th at p. 1134; § 224.2, subd. (i)(2).) We

generally review the court's factual finding that ICWA does not apply for substantial evidence. (§ 224.2, subd. (i)(2) [juvenile court's finding that ICWA does not apply to the proceedings is "subject to reversal based on sufficiency of the evidence"]; see also *In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 1004–1005, disapproved on another ground in *Dezi C.*, *supra*, 16 Cal.5th at p. 1152, fn. 18 [reviewing juvenile court's finding that it had no reason to know a child is an Indian child for substantial evidence but reviewing decision that ICWA inquiry was adequate for abuse of discretion].) "[T]he juvenile court's fact-specific determination that an inquiry is adequate, proper, and duly diligent is 'a quintessentially discretionary function' [citation] subject to a deferential standard of review.'" (*Dezi C.*, at p. 1141.) "If, upon review, a juvenile court's findings that an inquiry was adequate and proper and ICWA does not apply are found to be supported by sufficient evidence and record documentation as required by California law [citation], there is no error and conditional reversal would not be warranted even if the agency did not inquire of everyone who has an interest in the child. On the other hand, if the inquiry is inadequate, conditional reversal is required so the agency can cure the error and thereby safeguard the rights of tribes, parents, and the child." (*Ibid.*)

Here, the record indicates SSA repeatedly asked Mother, the presumed father, and the NREFMs about any Indian ancestry. However, SSA did not ask Mother about the maternal grandparents until the juvenile court set a November 20, 2024 hearing to address ICWA. SSA then called the number for the maternal grandmother and left a voicemail message. Later, after the court set the initial 366.26 hearing date, SSA attempted to call the maternal grandmother's number again, but the number was not in service. The record, however, contains no evidence that SSA attempted to locate the maternal grandfather, such as conducting queries of available databases. Nor

9

is there any evidence SSA informed Mother that it could not contact the maternal grandmother or asked if Mother had any further contact information. Although Mother did not raise this argument, we also note there is no evidence SSA asked the presumed father for contact information of his parents. Finally, there is no evidence of any prior ICWA findings suggesting the minors here are not Indian children, such as ICWA findings during a dependency proceeding involving a parent, sibling or half-sibling. On this record, we conclude SSA's ICWA inquiry was inadequate.

DISPOSITION

The order terminating parental rights is conditionally reversed. The matter is remanded to the juvenile court for compliance with the inquiry and notice requirements of sections 224.2 and 224.3. If the court thereafter finds a proper and adequate further inquiry and due diligence has been conducted and concludes ICWA does not apply (§ 224.2, subd. (i)(2)), then the court shall reinstate the order terminating parental rights. If the court concludes ICWA applies, then it shall proceed in conformity with ICWA and California implementing provisions. (See 25 U.S.C., § 1912 (a); §§ 224.2, subd. (i)(1); 224.3, 224.4.)


DELANEY, J.

WE CONCUR:


MOTOIKE, ACTING P. J.


SANCHEZ, J.

10