Filed 2/3/26  In re N.S. CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re N.S., a Person Coming Under the Juvenile Court Law. | |
| HUMBOLDT COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>S.L.,<br><br>      Defendant and Appellant. | A173769<br><br>(Humboldt County Super. Ct. No. JV2400012) |

S.L. appeals from the juvenile court's orders denying his request to be named presumed father, denying his petition under Welfare and Institutions Code section 388, denying his motion for reconsideration, and terminating his parental rights in the dependency proceeding for his son, N.S. (minor).[1]  He contends he was a statutorily presumed father from the outset of the case by

---

[1] Undesignated statutory citations are to the Welfare and Institutions Code.  Undesignated citations to rules are to the California Rules of Court.

1

virtue of his marriage to the minor's mother at the time of his birth, and the Humboldt County Department of Health and Human Services (department) and juvenile court failed to conduct a proper paternity inquiry or send him notices required by section 316.2, subdivision (b) (section 316.2(b)) and rule 5.635. He also argues the juvenile court failed to appoint counsel for him before the section 366.26 hearing or make a paternity finding. We agree with S.L. that he did not receive the required notice or counsel to which he was entitled at the appropriate junctures. The juvenile court also erred by not finding S.L. to be the minor's presumed father. These errors were prejudicial, so we will vacate the order terminating S.L.'s parental rights and remand for further proceedings.

## BACKGROUND

### I. Detention

In January 2024, the department filed a petition alleging the minor came within the jurisdiction of the juvenile court based on the behavior of L.S., his mother.[2] The minor was almost four years old and had been residing with L.S. The department named two men, S.L. and N.M.D., as alleged fathers. The department mailed notice of the hearing on the petition to S.L. at two different addresses in Ridgeland, South Carolina. Neither the petition nor the social worker's report was attached to either notice. The department's detention report listed a different

---

[2] Because the nature of the department's allegations against L.S. and her actions during the dependency are not relevant to this appeal, we do not discuss them.

Ridgeland, South Carolina address for N.M.D., but the department gave him notice by telephone.

The detention report named both S.L. and N.M.D. as alleged fathers based on L.S.'s report that either S.L., N.M.D., or a man named Antonio could be the minor's father. The report noted that L.S. was married to S.L. before the minor's birth and remained married to him. L.S. told the social worker that N.M.D. had helped raise the minor for the first two years of his life before L.S. moved to Humboldt County. N.M.D. told the social worker he was the minor's father.

L.S. and N.M.D. appeared at the detention hearing, the latter by Zoom. The court appointed counsel for N.M.D. N.M.D. said he was the minor's father. L.S. said she thought N.M.D. was the minor's father but she was not sure. L.S. also said that S.L. was her spouse. Counsel for the department noted that N.M.D. was a presumed father and S.L. was a presumed father by marriage. Mother was not prepared to agree to the elevation of N.M.D. to presumed father because S.L. was her legal spouse and she was not sure if N.M.D. was the minor's biological father. The juvenile court ordered the minor detained and placed him in the home of a nonrelative extended family member. The court ordered N.M.D. to complete drug and DNA tests. The juvenile court's findings and orders after the detention hearing state that all alleged parents present during the hearing who had not completed a JV-505 were provided with the JV-505 and told to complete it. The next lines on the form allowed the court to order the clerk to send the notice required by section 316.2(b) to other

3

named alleged parents, but S.L. was not named and that box was not checked.

## II. Jurisdiction

The department mailed S.L. notice of the jurisdiction hearing, first scheduled for February 2024. It did not attach a copy of the petition to the notice. The hearing was later continued to early March 2024. The record does not show that notice of this continued hearing was mailed to S.L.

In mid-March 2024, a week before the jurisdiction hearing, S.L. called the social worker. He said he had received paperwork about L.S. and the minor. He thought he was the minor's father, and he had cared for the minor as a baby. S.L. confirmed that he was married to L.S., and the social worker told him he was an alleged father because of that as well. S.L. told the social worker he was friends with N.M.D. The social worker said they needed to start by determining paternity, and S.L. agreed to complete a paternity test like N.M.D. The social worker told S.L. he had to appear at the next court date to be considered the minor's father and he would be appointed an attorney at that time. S.L. said he could appear by Zoom. He gave a new mailing address, which was the same as N.M.D.'s. S.L. said he spoke English but did not read it well. He said notices of court in Spanish would be fine, and he could find someone to help him with the paperwork. He told the social worker a Spanish interpreter would be helpful, although he understood 80 to 90 percent of English most of the time.

4

After the call, the social worker texted S.L. information about how to schedule a DNA test and gave him instructions for how to appear at the next court date. The department mailed a Spanish notice of the jurisdiction hearing to S.L. at the address he had given the social worker on the phone. It did not attach a copy of the petition to the notice.

The same day as S.L.'s call, N.M.D. filed a JV-505 statement regarding parentage in which he said he believed he was the minor's parent and asked the court to find he was the presumed parent and enter a judgment of parentage. He said he had told everyone the minor was his child and had been his primary caretaker in South Carolina until L.S. moved to California.

At the jurisdiction hearing, in late March 2024, the department told the court about S.L.'s call to the social worker expressing a desire to be involved in the case. The department suggested that because S.L. was a presumed father by marriage, was asking to be involved, and thought he might be the biological parent, counsel needed to be appointed to represent him. However, S.L. did not appear at the hearing. The juvenile court said it could not appoint counsel for S.L. because S.L. was not there, but it continued the hearing by about a month to allow him to appear. The court reserved the appointment of a specific attorney at the hearing for S.L. and scheduled a combined jurisdiction and disposition hearing.

5

### III.   Jurisdiction and Disposition

The disposition report prepared in April 2024 reflected S.L.'s March 2024 statement to the social worker that S.L. wanted to be considered the minor's father and take care of him whether the minor was S.L.'s biological child or not.

About 10 days before the jurisdiction and disposition hearing, neither N.M.D. nor S.L. had scheduled a DNA test. The social worker called S.L., who repeated the same statements from the earlier call and said the minor could live with S.L.'s other children whether the minor was S.L.'s son or not. S.L. again said he needed help reading English. The social worker gave S.L. information about paternity testing. S.L. claimed N.M.D. had completed a test, but the social worker said they did not have the results and that it would be best if they both tested. The social worker followed up the call by sending S.L. information about DNA testing. The department mailed a Spanish-language notice of the jurisdiction and disposition hearing to S.L. It did not attach a copy of the petition to the notice.

S.L. appeared at the April 2024 jurisdiction and disposition hearing by Zoom but did not have an audio connection. Counsel for the department said that the department had recently learned that S.L. had received paternity testing instructions not in Spanish and was requesting that instructions be provided in Spanish. The department committed to doing so. The department again requested a continuance because it was still waiting on the results of the paternity tests for S.L. and N.M.D., either or both of whom might qualify as presumed fathers. The

department said it did not want to proceed with disposition, find out later which one was the minor's presumed father, and then have to redo the hearing. The attorney reserved for S.L. said that S.L.'s English was pretty good, so the attorney did not think an interpreter would be needed. The department asked counsel to inform S.L. and N.M.D. of the next hearing date and asked if the reserved attorney for S.L. wanted to be appointed. The attorney said he would wait until after S.L.'s DNA test.

The social worker told S.L. by text message during the hearing that there were audio issues and the hearing was being continued to May 2024. The social worker also told S.L. it was important that he complete paternity testing as soon as possible because it was the main issue preventing the case from moving forward. S.L. said he would complete the testing the following week. The day after the hearing, a Spanish-speaking DNA testing representative called and left a message for S.L. Shortly afterwards, the department mailed him a notice of the new hearing date. It did not attach a copy of the petition to the notice.

S.L. did not appear at the May 2024 jurisdiction and disposition hearing. The court rescheduled the hearing for June 2024. The department mailed a Spanish-language notice of the new date to father. It did not attach a copy of the petition to the notice.

S.L. did not appear at the June 2024 hearing. Neither N.M.D. nor S.L. had completed DNA testing, so the court continued the hearing again until July 16, 2024. The department

mailed notice of the July 16 date to father in Spanish. It did not attach a copy of the petition to the notice.

S.L. did not appear on July 16, 2024. The juvenile court continued the jurisdiction and disposition hearing until July 30 at L.S.'s request. The department mailed notice of the new date in Spanish to S.L. It did not attach a copy of the petition to the notice.

On July 30, the juvenile court concluded the combined jurisdiction and disposition hearing. S.L. did not appear. The court considered an addendum to the disposition report, which stated that neither N.M.D. nor S.L. had responded to calls by the social worker. The department asked that N.M.D. and S.L. both remain alleged fathers because they had failed to comply with requests for DNA testing. The court found that N.M.D. and S.L. were alleged fathers and ordered reunification services only for L.S. The court relieved counsel for N.M.D. because he had not been elevated to presumed father.

## IV. Six-month Review

The department's report for the six-month review hearing said that the minor remained placed with the same nonrelative extended family member where he had been since the beginning of the case. Neither N.M.D. nor S.L. contacted the department during the reporting period. The social worker contacted S.L. about the paternity test and a DNA test was scheduled for S.L. for February 2025.

The department sent notice of the six-month review hearing in English to S.L. and N.M.D. Neither S.L. nor N.M.D.

appeared. The juvenile court ordered the termination of L.S.'s reunification services and set a section 366.26 hearing.

## V. Section 366.26 Hearing and Section 388 Petition

### 1. Notice of Hearing and Testing Results

In January 2025, the juvenile court clerk mailed to S.L. an English-language notice of the section 366.26 hearing and the need to file a writ petition to obtain review of the findings the court had made when setting it. A separate notice of the hearing was also sent in February 2025.

In March 2025 the department gave notice to S.L. by publication because a notice mailed to him at his last known address had been returned as "Not known at address given."

The department's April 2025 report for the section 366.26 hearing stated that S.L. had completed an appointment for testing in March 2025, but a photocopy of his identification was too dark so he needed to provide another copy. N.M.D. completed a test. The tests showed that S.L., not N.M.D., was the minor's biological father.

### 2. Counsel, Section 388 Petition, and JV-505

S.L. appeared by Zoom at the section 366.26 hearing on May 28, 2025. The court appointed counsel for him. Through counsel, S.L. requested presumed father status based on his marriage to L.S. He also asked for the minor to be placed with him. The department's counsel said she could not submit to S.L.'s request to be named presumed father and needed to do some investigation. S.L.'s counsel also requested a continuance of the hearing because she had not had a chance to investigate

9

whether notice was proper and wanted to file a statement regarding parentage on form JV-505. The department opposed the request for a continuance. The juvenile court began the section 366.26 hearing, found that notice had been proper, and admitted the department's report and addendum into evidence. It then continued the hearing to give S.L. a chance to file anything he wished to file.

S.L. filed a section 388 petition asking the court to change its order placing the minor in foster care and instead place the minor with him as the minor's presumed father. He objected that there had not been an appropriate paternity inquiry, he had not been properly notified until recently, he was the minor's presumed father under Family Code section 7611, subdivision (a) (section 7611(a)) as well as his biological father, and there was no finding that returning the minor to S.L. would be detrimental. The department asked the court to identify S.L. as the minor's biological father but otherwise opposed his petition.

S.L. also filed a form JV-505 in which he declared he was married to L.S., he had told his family that the minor was his son, and he believed he was the minor's parent. He gave the court a link to a Facebook video of him wrestling with the minor when he took care of the minor. He attached a copy of his marriage certificate, which shows he married L.S. in South Carolina in 2015.

S.L. and his counsel appeared at a hearing on his section 388 petition in June 2025. His counsel noted that the only documents she or S.L. had received were the section 366.26

10

report and addendum and copies of the department's delivered service logs, not records from earlier in the case.

S.L. testified about the family background and his relationship with the minor. S.L. married L.S. in South Carolina May 2015. S.L. and L.S. had two children together and lived in South Carolina. L.S. became pregnant with the minor in 2019. At this time, L.S. and S.L. had an on-gain, off-again relationship and had started to separate. L.S. lived part of the time with S.L., part with N.M.D., and part with a friend in Tennessee. L.S. gave birth to the minor in Tennessee in February 2020.

S.L. met the minor when he was three weeks old. S.L. was not sure at first that the minor was his biological child. L.S. had told S.L. that the minor was someone else's child. But S.L. always loved the minor as his own child. S.L. took care of the minor and treated the minor with the same love as S.L.'s other children. S.L. bought the minor clothes, diapers, or other items the minor needed. S.L. saw the minor every afternoon after work and played with him. The minor stayed at S.L.'s house for one or two nights, sometimes three. The minor called both S.L. and N.M.D. by their names or "papa" or "daddy."

S.L. last saw the minor two or three years earlier, when L.S. came to take the minor and N.M.D. back with her to California. When the minor was with L.S. in California, S.L. talked to him by video call every day on his lunch break.

S.L. helped L.S. with money while she was in South Carolina. S.L. consistently sent money to L.S. via her relatives after she moved to California, even though he was not sure that

11

the minor was his. S.L. had continued to send L.S. money during the dependency, even after the minor was removed from her custody.

S.L. previously used drugs, so his two older children with L.S. lived with their maternal grandmother. S.L. stopped using drugs two years earlier.

S.L. acknowledged that the department had sent him notices of court hearings. He tried to attend some of the hearings but always had bad connections and then would lose a good signal after a few minutes. He would communicate with the department afterwards. He said he became aware of his right to an attorney three or four months earlier.

S.L. said that he was not sure he understood at the time of his March 2024 call with the social worker why the minor was taken away. But L.S. had called him and said why the department was taking the minor away. L.S. had also said the removal would just be for a short time and L.S. would get the minor back soon.

S.L. said he originally did not get paternity testing because he thought the minor was N.M.D.'s child and the testing would be a waste of time. He figured that if N.M.D. would go and confirm his paternity, then S.L. would not have to. Only when S.L. heard that N.M.D. had not gotten tested and received a phone call from someone who spoke Spanish did S.L. decide to get tested himself. N.M.D. got tested as well afterwards.

S.L. said he was only able to talk to the minor during the course of the dependency when L.S. visited the minor. L.S. would

12

connect them with a video call, and the minor remembered S.L.'s name. S.L. had asked someone involved in his case about setting up calls with the minor, but that person never really gave him a reply. He could not recall whom he asked. S.L. had recently been communicating with the minor's caregiver, whose family in Ridgeland S.L. knew. The caregiver had agreed to allow him to talk to the minor.

### 3. Arguments and Ruling

S.L.'s counsel argued that there had been a change of circumstances in that S.L. had always been a presumed father but that had fallen through the cracks. He said there had not been an appropriate paternity inquiry. He said S.L. had only recently obtained counsel and was just understanding the possible consequences of the proceedings.

The juvenile court denied S.L.'s section 388 petition as not being supported by sufficient evidence of changed circumstances. It found that S.L. received notices from the department, understood them, and knew of the court case and that the minor was in foster care. The court therefore could not find that there had been a change of circumstances to support S.L.'s section 388 petition. S.L.'s counsel suggested the juvenile court could on its own motion correct the error in the handling of the case of not treating him as a presumed father. The juvenile court explained that it was not required to elevate to presumed father status someone who never participated in the case or asked to be elevated.

S.L. moved for reconsideration, pointing out that the juvenile court had a duty under California Rules of Court, rule 5.635 to determine parentage of the minor. S.L. further argued that he was not required to establish changed circumstances to have the court address paternity and his JV-505 statement regarding paternity. The juvenile court stated that it had found S.L. was the minor's biological father but that S.L. did nothing during the year and a half that the minor was in foster care. It denied S.L.'s motion for reconsideration.

## DISCUSSION

### I. Fathers Under Dependency Law

"There are three types of fathers in dependency law: presumed, biological and alleged.[3] [Citation.] ' "A father's status is significant in dependency cases because it determines the extent to which the father may participate in the proceedings and the rights to which he is entitled." ' [Citation.] [¶] Presumed parent status, which is the equivalent of a legal parent, ' " 'ranks [the] highest.' " ' [Citation.] It confers 'all the rights afforded to parents in dependency proceedings, including standing, the appointment of counsel, and reunification services.' [Citation.] Presumed parentage is determined under the Uniform Parentage Act (Fam. Code, § 7600 et seq.), a statutory framework that

---

[3] We recognize that an alleged parent can be of either gender and that an alleged mother has the same rights as an alleged father. For convenience, and because this case involves the more typical situation addressed in the case law in which the alleged parent is a father, we use the male gender without meaning to exclude alleged mothers.

14

' "provides for conclusive and rebuttable presumptions of paternity" ' on various grounds." (*In re A.H.* (2022) 84 Cal.App.5th 340, 349.)  One circumstance conferring presumed parent status is if "[t]he presumed parent and the child's natural mother are, or have been, married to each other and the child is born during the marriage." (Fam. Code, § 7611(a).)  Another circumstance is if "[t]he presumed parent receives the child into their home and openly holds out the child as their natural child." (*Id.*, subd. (d).)

One rank below presumed father is biological father, which is "a man 'who has established his paternity but has not established his qualification as a presumed parent.' [Citation.] 'A court may order reunification services for biological fathers if they are in the child's best interest . . . .' [Citation.]

"Finally, an alleged father is a man who may be a child's father but has not yet established either presumed father status or biological paternity.  [Citation.]  'Alleged fathers have "fewer rights" and, unlike presumed fathers, "are not entitled to custody, reunification services, or visitation." ' [Citation.] . . . [¶] 'An alleged father has no rights in a dependency case other than the right to step forward and to seek to establish his paternity of the child' [citation], a right that is guaranteed through various constitutional and statutory requirements . . . ." (*In re A.H.*, *supra*, 84 Cal.App.5th at p. 350.)

## II. Parentage Inquiry and Notice

S.L. contends the juvenile court failed to conduct a proper paternity inquiry and he did not receive notice to which he was entitled.  We agree.

"[J]uvenile courts have a duty to determine a child's parentage at the earliest opportunity, imposed both by statute and under the California Rules of Court." (*In re A.H.*, *supra*, 84 Cal.App.5th at p. 363.)  Section 316.2, subdivision (a) states, "At the detention hearing, or as soon thereafter as practicable, the court shall inquire of the mother and any other appropriate person as to the identity and address of all presumed or alleged fathers."  The statute lists questions the court must ask as it deems appropriate, including "[w]hether the mother was married or believed she was married at the time of conception of the child or at any time thereafter" and "[w]hether any man otherwise qualifies as a presumed father pursuant to Section 7611, or any other provision, of the Family Code."  (§ 316.2, subd. (a)(2), (7).)  "The California Rules of Court go even further.  Rule 5.635 imposes a continuing duty on the juvenile court to inquire about parentage at every hearing from the very beginning of a dependency case until the question of parentage has been resolved; it specifies steps the court must take to address the issue of parentage with every person present at each hearing and with local child support authorities; and, if there has been no prior determination of parentage, it requires the court to make such a determination." (*In re A.H.*, at p. 364.)

An alleged father identified through this inquiry has statutory and constitutional rights to notice, " 'with the

16

constitutional dimension requiring " 'notice that is reasonably calculated to advise [parents] an action is pending and afford them an opportunity to defend.' " ' [Citation.]  A parent's fundamental right to adequate notice and the opportunity to be heard in dependency matters involving potential deprivation of the parental interest has little value ' " ' "unless that parent is advised of the *nature* of the hearing giving rise to that opportunity, including what will be decided therein.  Only with adequate notice can one choose to appear or not, prepare or not, and to defend, or not." ' " ' [Citation.]  Without notice, an alleged father 'will be uninformed of his right to participate and thus unable to elevate his status to presumed parent, to be afforded the opportunity to visit with his child, to receive any services needed to reunify and to protect his rights to custody or an ongoing relationship with his child.' " (*In re A.K.* (2024) 99 Cal.App.5th 252, 263–264.)

To that end, "[a]n alleged father is 'entitled at the earliest possible point to be informed of the *importance of*, and apprised of the statutory method for, seeking presumed parent status. [¶] Specifically, section 316.2 requires the court to give to all men who are identified as an alleged father a statutorily prescribed notice and a statutorily prescribed form containing various advisements that enables them to exercise their rights as an alleged father to assert a claim to parentage.  This procedure mandated by section 316.2 *is the statutory means of protecting an alleged father's limited due process to notice and an opportunity to*

17

*appear* in the case to assert a position and attempt to change his paternity status.' [Citations.]

"In relevant part, section 316.2, subdivision (b) states: 'If, after the court inquiry, one or more men are identified as an alleged father, each alleged father shall be provided notice at his last and usual place of abode by certified mail return receipt requested alleging that he is or could be the father of the child. The notice shall state that the child is the subject of proceedings under Section 300 *and that the proceedings could result in the termination of parental rights* and adoption of the child. Judicial Council form Paternity — Waiver of Rights (JV-505) shall be included with the notice.' (Italics added.)

"Rule 5.635(g) of the California Rules of Court places a related and, in some ways, more robust duty explicitly on the clerk of the trial court (unless certain circumstances not pertinent here exist): 'If, after inquiry by the court or through other information obtained by the county welfare department or probation department, one or more persons are identified as alleged parents of a child for whom a petition under section 300, 601, or 602 has been filed, *the clerk must provide* to each named alleged parent, at the last known address, by certified mail, return receipt requested, *a copy of the petition, notice of the next scheduled hearing*, and Statement Regarding Parentage — (Juvenile) (form JV-505).' (Italics added.)" (*In re A.K.*, *supra*, 99 Cal.App.5th at p. 265.)

The department and juvenile court failed to comply with these requirements. The department was aware of S.L. as at

18

least an alleged father when it filed the petition, since the detention report names him as such.[4]  The juvenile court's form findings and orders after the detention allowed it to order the clerk to send the notice required by section 316.2(b) to alleged parents who were not at the hearing, but S.L. was not named and that box was not checked.  The department does not cite and we have not discovered anything else in the record that shows the court clerk sent the required notices to S.L. despite the lack of a court order.

This was error.  Father was not told that his parental rights could be terminated, as required by section 316.2(b).  He was not given a copy of the petition, as required by rule 5.635(g).  And he was not given form JV-505, as required by both section 316.2(b) and rule 5.635(g).

The department did send other notices to father before and after the detention hearing, but none of them cured this violation.  The detention report and a proof of service in the record state that the social worker sent notice of the detention hearing to S.L. at two addresses, but the notices do not mention the termination of parental rights.  The petition would have informed S.L. of this

---

[4] The report should have identified S.L. as a presumed father because it mentioned his marriage to L.S. at the time of the minor's birth.  The department had no trouble identifying S.L. as a presumed father by marriage at the detention hearing.  We note also that section 290.1 requires notice of a detention hearing for a child to be retained in custody to be served on a child's "father or fathers, presumed and alleged," at the outset of a case.  (§ 290.1, subd. (a)(2).)  This necessarily presupposes that some fathers can be presumed fathers, even without asking first to be elevated or court action acknowledging them as such.

possible consequence, since it was on Judicial Council form JV-100 and prominently mentioned the potential for loss of parental rights.  (*In re A.K.*, *supra*, 99 Cal.App.5th at p. 265, fn. 7.)  But the department did not attach a copy of the petition to the notice. There is no indication that form JV-505 was attached, either. However, the notices did state that S.L. had the right to be represented by an attorney and one would be appointed for him if he could not afford it.

The department sent S.L. notices of the ensuing jurisdiction and, eventually, combined jurisdiction and disposition hearing dates.  These notices were on the same form as the notices of the detention hearing, did not have the petition attached, and did not satisfy the requirements of section 316.2(b) or rule 5.635(g), although they, too, mentioned S.L.'s right to an attorney.

The social worker communicated with S.L. by phone on a few occasions, but none of the records of their interactions shows that the social worker gave him the information required by section 316.2(b) or rule 5.635(g).  S.L. spoke with the social worker ahead of the jurisdiction hearing, but the social worker's notes from the call do not say she told S.L. his parental rights could be terminated, offered to send him a copy of the petition, or mentioned form JV-505.  The social worker also spoke with S.L. while preparing the disposition report, but nothing in those call notes mentions giving S.L. the required information or documents.

The notice to father regarding the section 366.26 hearing may have contained some of the required information. The department's report for the section 366.26 hearing states it mailed S.L. notice of the section 366.26 hearing. The record does not appear to contain a copy of this notice, but the department may have used form JV-300, as it did with L.S. That form states that parental rights will be terminated at the section 366.26 hearing. Father may not have received this notice, however. The department told the court a notice to S.L. had been returned, to justify giving notice by publication. The published newspaper notice mentions the termination of parental rights as well. But S.L. told the social worker he could not read English well, so it seems unlikely he read the published notice. Even if these notices did reach S.L., they did not provide him a copy of the petition or form JV-505 and came far too late to satisfy section 316.2(b) or rule 5.635(g) in any event.

S.L. detailed in his opening brief these flaws in the notices sent to him. The department's only response is to cite the notices of hearings it sent to S.L. that mentioned his right to counsel. We take this failure to challenge S.L.'s evidence of deficiencies in the notices as a concession that S.L. has correctly described what transpired in the case. We also reject the department's position that the notices of the later hearings suffice. Alleged or presumed parents are entitled to notice of specific hearings in addition to the notice required by section 316.2(b). (*In re A.H.*, *supra*, 84 Cal.App.5th 367–368; § 291, subd. (a)(2).) These notices cannot substitute for the section 361.2(b) notice unless

21

they contain the information that statute requires, which the hearing notices here did not.

### III. Counsel

S.L. contends the juvenile court erred by not appointing him counsel when it learned he qualified as a presumed father or at his first appearance. We agree.

Section 317, subdivision (b) states, "When it appears to the court that a parent or guardian of the child is presently financially unable to afford and cannot for that reason employ counsel, and the child has been placed in out-of-home care, or the petitioning agency is recommending that the child be placed in out-of-home care, the court shall appoint counsel for the parent or guardian, unless the court finds that the parent or guardian has made a knowing and intelligent waiver of counsel as provided in this section." Presumed fathers are included within this right. (*In re A.H., supra*, 84 Cal.App.5th at p. 349.) "So long as an indigent parent or guardian appears or communicates to the court a request for legal representation, counsel should be appointed." (*In re Al.J.* (2019) 44 Cal.App.5th 652, 668.)

The juvenile court should have appointed S.L. counsel before the completion of the jurisdiction and disposition hearing. The detention report stated that L.S. was married to S.L. before the minor's birth and remained married to him. Although the report continued to refer to S.L. as an alleged father, the department explicitly flagged the issue at the detention hearing, telling the court, "[I]t also sounds like [S.L.] is a presumed father by marriage." This was sufficient to show that S.L. qualified as a

presumed father under Family Code section 7611(a) and would be entitled to counsel. However, S.L. had not yet appeared at the detention hearing, so the juvenile court's reluctance to appoint counsel is understandable. (Abbott et al., Cal. Juvenile Dependency Practice (Cont.Ed.Bar 2025) § 2.47 ["Most courts will not appoint counsel for a parent who has not come into court unless the parent is incarcerated . . . ."].)

When S.L. called the social worker on his own initiative in mid-March 2024, the social worker told him he would be appointed counsel if he appeared at the next hearing. The department informed the court at the next hearing that this call had occurred and asked for counsel to be appointed for S.L. as a presumed father. This would have been an appropriate juncture to appoint counsel, but S.L. had still only contacted the social worker, not the court, so the court's choice to only reserve counsel for S.L. is again perhaps understandable.

In April 2024, S.L. himself appeared by Zoom, albeit without an audio connection. By this point, at the latest, the juvenile court should have construed S.L.'s attempted appearance in court from across the country as demonstrating a sufficient interest in the case to justify the appointment of counsel. It is noteworthy that the department once again suggested that counsel be appointed. Inexplicably, however, the attorney reserved for S.L. stated that he wanted to wait until S.L. had completed a DNA test, apparently unaware of S.L.'s status as a presumed father by marriage.

23

These circumstances resemble those in *In re Al.J.*, *supra*, 44 Cal.App.5th at pages 657–659, in which a presumed father, incarcerated in Mississippi, wrote letters to the agency and juvenile court asking to be present at a jurisdiction and disposition hearing. The Court of Appeal held these requests included an implied request for counsel. (*Id.* at p. 669.) Similarly, *In re Christopher L.* (2022) 12 Cal.5th 1063, 1071–1072, affirmed a Court of Appeal's holding that a juvenile court should have appointed counsel at a jurisdiction and disposition hearing to represent an incarcerated presumed father who had not yet appeared in court but who had written to the social services agency and asked about the possibility of appearing by telephone. S.L. was not incarcerated here, but his communications with the department and video appearance in April 2024 demonstrate sufficient interest in the case to warrant counsel. This case is therefore unlike *In re Ebony W.* (1996) 47 Cal.App.4th 1643, a case the department cites in support of its argument that counsel did not need to be appointed for S.L. because he did not appear or indicate a desire for counsel in any manner. The mother there appealed from the termination of her parental rights and faulted the juvenile court for not appointing counsel to represent her at the detention, jurisdiction, disposition, or section 366.26 hearings, even though she did not appear at any of them. (*Id.* at pp. 1645–1647.) The court held there had to be "some manifestation by the indigent parent that he or she wants representation before the court is obliged to appoint counsel." (*Id.* at p. 1647.) Father here manifested such

24

desire when he tried to appear, thwarted only by technical difficulties, after being told he could be appointed counsel if he did.

After S.L. attempted to appear at the April 2024 hearing, we cannot conceive why, when the department asked if the attorney reserved for S.L. wanted to be appointed and the attorney said he wanted to wait until S.L. completed a DNA test, the juvenile court did not intervene and formally appoint the attorney to represent S.L.  It appears that the attorney had already contacted S.L. before the hearing, since the attorney stated that S.L.'s English language skills were sufficient to understand what happened in the courtroom.  This counsel's desire to delay his appointment is also in marked contrast to the zealous advocacy S.L. received later when counsel reached out to him in advance of being formally appointed to him and seconds after being appointed asked for presumed father status and took steps to file a section 388 petition and JV-505 form.  The difference in approaches demonstrates why the juvenile court should have formally appointed counsel to vigorously protect S.L.'s interests as soon as reasonably possible, rather than drifting with an informal arrangement in which counsel was not accountable for failing to advocate for S.L.

## IV.    Parentage Determination

S.L. faults the juvenile court for failing to find that he was a presumed father of the minor.  The department concedes that the juvenile court should have made the requested finding.  We agree with the parties.

Rule 5.635(h) states, "If a person appears at a hearing in dependency matter . . . and requests a judgment of parentage on form JV-505, the court must determine: [¶] (1) Whether that person is the biological parent of the child; and [¶] (2) Whether that person is the presumed parent of the child, if that finding is requested." " 'This is a mandatory, not a discretionary, rule.' " (*In re J.H.* (2011) 198 Cal.App.4th 635, 648.)

Father submitted a form JV-505 ahead of the section 366.26 hearing, which requested findings that he was the biological and presumed father of the minor. Yet when S.L. cited Family Code section 7611(a) and asked for a finding that he was a presumed father of the minor, the court insisted that S.L. had not shown changed circumstances to support his section 388 petition. This was error. Rule 5.635(h) requires a court to make a finding about both biological and presumed parenthood upon request. The juvenile court had no basis to require proof of changed circumstances before making a finding regarding S.L.'s status as presumed father.

The juvenile court perhaps cured this error in response to S.L.'s motion for reconsideration. At that hearing, the juvenile court remarked that it had previously found S.L. to be the minor's biological father. We construe this as a reference to the minutes for the hearing where S.L. was appointed counsel, before he had even submitted a JV-505. Those minutes state, "Alleged father deemed biological father by DNA results." The minutes from the hearing on S.L.'s motion for reconsideration also perhaps address S.L.'s request for presumed father status, since

26

they state that the court confirmed "its previous finding, *denying* the Motion for Reconsideration, to find [S.L.] as a Presumed Father."

Both of these minute entries are somewhat ambiguous, but even if they demonstrate that the juvenile court made determinations on S.L.'s requests to be named biological and presumed father by granting the first and denying the second, the denial of presumed father status was error.  S.L. was entitled to a rebuttable presumption that he was the minor's father under Family Code section 7611(a) by virtue of his marriage to L.S. at the time of the minor's birth.  That presumption was never rebutted, so the juvenile court should have declared S.L. to be a presumed father.  The juvenile court at one point cited S.L.'s lack of contact with the minor in recent years, lack of a parental relationship with him, failure to hold him out as his own, and failure to engage with the dependency case as rebutting the presumption.  But as the department points out, there is no legal authority for the proposition that the marital presumption can be rebutted for lack of a relationship with the child.  The presumption turns solely on marital status when the child is born or during the period shortly before the birth.  (Fam. Code, § 7611(a).)  The presumption particularly cannot be rebutted where no other man is claiming parental rights and the result would be to leave a child fatherless.  (*In re Nicholas H.* (2002) 28 Cal.4th 56, 70.)  By the time of the section 366.26 hearing, N.M.D. was no longer appearing in the case, much less claiming

27

to be the minor's father.  There was no basis to deny S.L. presumed father status at that point.

## V. Prejudice

Inadequate notice under section 316.2(b) and rule 5.635(g) and the failure to appoint counsel will not require reversal of a juvenile court order unless they are prejudicial.  (*In re Christopher L., supra,* 12 Cal.5th at pp. 1069, 1082 [failure to appoint counsel]; *In re Marcos G.* (2010) 182 Cal.App.4th 369, 387–388 [inadequate § 316.2(b) and rule 5.635(g) notice].)  We have no difficulty concluding the juvenile court's errors were prejudicial.  (See *In re A.H., supra,* 84 Cal.App.5th at p. 372 [Courts of Appeal are split regarding the standard for prejudice]; *In re Christopher L.,* at p. 1083 [declining to decide which standard of prejudice applies].)  Even under the more difficult standard for an appellant, which requires proof of a reasonable probability of a more favorable result (*People v. Watson* (1956) 46 Cal.2d 818, 836), the errors were prejudicial.

The department and juvenile court's failures to give S.L. adequate notice were consequential because they kept him "uninformed 'of the significance of the case' and of 'his right to *attempt* to prevent the court from severing all legal ties between him and the child he claims as his" son.  (*In re A.K., supra,* 99 Cal.App.5th at p. 267.)  Given S.L.'s statements to the social worker that he wanted to have the minor live with the minor's siblings regardless of S.L.'s biological paternity, if S.L. had received a copy of JV-505 at any point before counsel was appointed there is a reasonable probability he would have

completed and submitted it, thereby forcing the juvenile court to name him a presumed father of the minor. There is also a reasonable probability that S.L. would have made more of an effort to appear in the case had he received adequate notice and counsel to make clear to him the gravity of the case.

While an alleged father need not establish that he would have been recognized as a presumed father in order to establish prejudice (*In re A.H.*, *supra*, 84 Cal.App.5th at p. 372), there is no question that S.L. would have so qualified if he had received counsel before the conclusion of the jurisdiction and disposition hearing. Any competent attorney would have immediately filed a JV-505 for S.L., as his counsel did after being appointed at the section 366.26 hearing. As noted *ante*, this would have required the juvenile court to find S.L. to be the minor's presumed father.

The juvenile court potentially could have found at that time that N.M.D. was also a presumed father. N.M.D. had submitted a JV-505, which said that he had accepted the minor into his home and held him out as his son. This perhaps might have warranted finding him to be a presumed father under Family Code section 7611, subdivision (d). But such a finding would not have rebutted S.L.'s presumption. It simply would have obligated the juvenile court to balance the competing presumptions. Family Code section 7612, subdivision (b) states, with an exception not relevant here, "If two or more presumptions arise under Section 7611 that conflict with each other . . . , the presumption that on the facts is founded on the weightier considerations of policy and logic controls." We need not predict

29

with certainty how the juvenile court would have balanced these competing presumptions. There is at least a reasonable probability that S.L. would have prevailed in becoming the sole presumed father, given his marriage to mother, his relationship with the minor early in the minor's life, his stated desire for custody of the minor, and his continued role in the minor's siblings' lives.

Sole presumed father status for S.L. at disposition could have put this case on a dramatically different trajectory. It would have given S.L. a claim to placement of the minor at disposition as a noncustodial parent and made him presumptively entitled to reunification services. (§§ 361.2, subd. (a), 361.5, subd. (a).) We recognize that a juvenile court may bypass a parent for services if the parent failed to reunify with and had services terminated for a sibling and the parent had not subsequently made a reasonable effort to treat the problems that led to the removal of the sibling. (§ 361.5, subd. (b)(10)(A).) A similar exception applies if a parent previously had parental rights terminated as to a sibling and did not make a reasonable effort to treat the problems that led to the removal of the sibling. (*Id.,* subd. (b)(11)(A).) The department might have argued that these exceptions applied to S.L., since he admitted to the social worker that his other children with L.S. were involved with child protective services in South Carolina and now lived with their maternal grandmother. But S.L. also said that this was because he previously struggled with substance use and that he was now clean. The department did

30

not investigate this matter further because it erroneously considered S.L. to be only an alleged father, so the record does not have many facts that would bear on these considerations. "[L]ike other appellate courts before us in similar circumstances, we decline to deem [the juvenile court's] errors harmless when the poor state of the record is the result of the very errors themselves." (*In re A.H.*, *supra*, 84 Cal.App.5th at p. 373.)

The possibility of a different outcome makes this case unlike *In re Christopher L.*, where the Court of Appeal found a deprivation of counsel for a presumed father was harmless because termination of reunification services for the presumed father was "inevitable." (*In re Christopher L.* (2020) 56 Cal.App.5th 1172, 1192, affd. (2022) 12 Cal.5th 1063; accord, *In re Kobe A.* (2007) 146 Cal.App.4th 1113, 1122–1124 [failure to send JV-505 harmless where father could not qualify for presumed father status under Family Code section 7611, was incarcerated for entire reunification period, and was presumptively ineligible for services based on conviction for violent felony].) The fact that the juvenile court failed to send S.L. a copy of the petition or JV-505, as well as the fact that S.L. contacted the social worker on his own initiative and tried to appear at the jurisdiction and disposition hearing, also distinguish this case from *In re Marcos G.*, *supra*, 182 Cal.App.4th at pages 388–389, which found a failure to send a father a JV-505 was harmless where the agency sent notices of hearings with copy of petition attached and the father made no efforts to contact agency for 16 months.

We are cognizant that reversing the juvenile court's order here, as in all dependency matters, comes at the heavy cost of delaying permanence for the minor. However, this fact alone cannot justify allowing the juvenile court's errors to go uncorrected. We also agree with the department that S.L. certainly could have done more to become involved with this case, even with the inadequate notice he received. He ignored countless notices of hearings between the hearing he attempted to appear at through Zoom and the section 366.26 hearing and delayed DNA testing for no apparent reason. However, the extent of S.L.'s efforts in this case must be considered in the context of the importance of his rights to adequate notice of the proceedings and counsel. As another court recently explained in a case in which an alleged father was denied notice under section 316.2(b), "The importance of this step cannot be overstated." (*In re A.H.*, *supra*, 84 Cal.App.5th at p. 367.) Similarly, we must bear in mind "the 'unique impact that a deprivation of the right to appointed counsel can have . . . on the fairness of the dependency proceedings.' " (*In re Al.J.*, *supra*, 44 Cal.App.5th at p. 670.) Without adequate notice and counsel, "there was simply no assurance of protecting" S.L.'s right to demonstrate the presumed father status to which he was entitled. (*In re A.H.*, at p. 367.) "Even in cases where alleged fathers have actually appeared in a dependency case, appellate courts have reversed orders entered late in the dependency case — including orders terminating parental rights — for the juvenile court's failure to

32

give an alleged father the statutorily required notice and form under section 316.2." (*Ibid.*)

The Supreme Court recently held that although the denial of counsel was not structural error and was susceptible to harmless error review, " 'appellate courts should be wary of finding harmless error '[w]hen a counterfactual inquiry appears too difficult to responsibly undertake, or a counterfactual conclusion relies on inferences that really amount to guesswork.' " (*In re Christopher L.*, *supra*, 12 Cal.5th at p. 1082.) This is not a case in which we can see clearly what would have transpired had the juvenile court given S.L. the notice and counsel to which he was entitled. There is at least a reasonable probability that S.L. could have taken enough of a role in the case to have achieved an outcome more favorable to him, which is sufficient to require reversal.

## VI. Section 388 Petition

The department insists that the juvenile court properly denied S.L.'s section 388 petition because it showed no new circumstances and was not in the minor's best interests. (*In re D.R.* (2011) 193 Cal.App.4th 1494, 1512 [post-reunification, " 'to revive the reunification issue,' " a parent's section 388 petition "must prove that circumstances have changed such that reunification is in the child's best interest"].)

We need not spend long on this argument. Although S.L.'s briefing here focuses on his section 388 petition, his notice of appeal includes the section 366.26 termination of parental rights order as one of the orders he appealed from. Even if the juvenile

33

court's ruling on S.L.'s section 388 petition was correct as a technical matter at the time when it ruled, we cannot ignore the fact that the errors S.L. complains of in his briefing violated his rights and were prejudicial. This requires us to vacate the juvenile court's section 366.26 order terminating S.L.'s parental rights. On remand, these errors, now established, will qualify as new evidence or changed circumstances to support any challenges under section 388 that S.L. chooses to make to orders and/or findings previously entered against him, including but not limited to the jurisdictional findings and orders and dispositional findings and orders. The lack of notice and counsel will also make it unnecessary for S.L. to demonstrate that any changes in findings or orders are in the minor's best interests. (*In re R.A.* (2021) 61 Cal.App.5th 826, 836–837 [when lack of notice in violation of due process is raised via a section 388 petition, proof that a changed order is in the child's best interests is unnecessary].)

## DISPOSITION

The order of the juvenile court terminating S.L.'s parental rights is vacated. The matter is remanded to the juvenile court to determine whether S.L. is the minor's presumed parent and for further proceedings not inconsistent with this opinion. Our decision is without prejudice to S.L. filing an appropriate motion pursuant to section 388 on remand to challenge any orders and/or findings previously entered against him, including but not limited to the jurisdictional findings and orders and dispositional findings and orders. In view of the errors earlier in the case with

34

respect to S.L., the juvenile court should appoint counsel to represent him in any further proceedings.

BROWN, P. J.

WE CONCUR:

GOLDMAN, J.
MOORMAN, J.*

*In re N.S.* (A173769)

---

* Judge of the Superior Court of Mendocino County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.